ST. LOUIS SOUTHWESTERN RAILWAY COMPANY *v.* EVANS.

Opinion delivered June 3, 1912.

NEGLIGENCE—RIGHT TO RECOVER PUNITIVE DAMAGES.—In order to justify the infliction of punitive damages, it must appear that the negligent party knew or had reason to believe that his act of negligence was about to inflict injury, and that he continued in his course with a conscious indifference to consequences from which malice will be inferred.

Appeal from Cross Circuit Court; *W. J. Driver*, Judge; reversed.

### STATEMENT BY THE COURT.

Lena and Arthur Evans, minors, brought suit by next friend, against the railway company, claiming actual and exemplary or punitive damages for injuries resulting from sickness alleged to have been caused by the negligent and wilful failure of the railroad company's agents to make a fire and keep

comfortably warm its station house at Hickory Ridge, on December 19, 1909, when snow was on the ground, and while they were at said station as passengers intending to take the next train to another station on its line.

The railroad company denied any negligence on its part in the failure to make the fire and such wilful misconduct on the part of its agents as would warrant the assessment of exemplary damages, and that any injury resulted to plaintiffs because of the failure of defendant to make the fire.

The causes were consolidated on motion and tried together.

The facts substantially are that Lena Evans, aged eight years, and Arthur, not yet three years old, were taken by their mother to Hickory Ridge station, on appellant's line on December 19, 1909, for the purpose of becoming passengers upon its train to Fair Oaks, and tickets were purchased authorizing their transportation. Snow was on the ground, and the weather was cold, and Lena's feet were wet upon reaching the station from walking in the snow. There was no fire in the waiting room when they arrived, about thirty minutes before train time, and their mother requested the agent of defendants to build a fire. The agent agreed to do so, and shortly went into the waiting room, put some kindling and waste and coal into the stove, poured oil on it, and struck a match and started the fire. It did not burn, however, and later their mother stated she again requested that a fire be made, but the evidence is conflicting upon this point. None was made, and she and the children were taken by their cousin, Lee Barnett, an eighteen-year-old boy, who brought them to the station carrying Arthur in his arms, to the boarding house of Mrs. Clark, across the street, where there was a comfortable fire, and they remained comfortable until the train arrived.

Lena had been sick, having chills, before that day, and had a chill that day, and a week or so later developed a case of pneumonia. Arthur had some trouble with his throat from which loss of voice resulted. The physicians testified, however, that he had stenosis of the throat which was caused by diphtheria, a germ disease, and could not have been occasioned by cold and exposure. They went from Hickory Ridge to Fair

Oaks on the train, where they took the Iron Mountain train for Hamlin, from which station they walked about two miles to L'Anguille Spur, being unable to get a conveyance, and it being a flag station. Arthur was carried by G. A. Neal, and Lena walked. The snow was on the ground, and the day cold. Mr. Neal said they stayed at his house during Christmas, and that Lena had recovered from her sickness before they left, without the service of a physician, and that there was no complaining from Arthur, but that he was taken sick, and he thought he had a case of diphtheria after they left his house. The plaintiff, Lena, had been having chills all fall. They drove in a wagon from L'Anguille to his house.

The court instructed the jury, giving three forms of verdicts in each of the cases, in one case as follows:

"We, the jury, find for the plaintiff, Arthur Evans, and fix his damages at $..........................

"..........................................................................................

"Foreman."

"We, the jury, find for the plaintiff, Arthur Evans, for punitive damages, in the sum of $.........................

"..........................................................................................

"Foreman."

"We, the jury, find for the defendent as to the suit of plaintiff, Arthur Evans.

"..........................................................................................

"Foreman."

The jury returned a verdict for Arthur Evans for punitive damages only for $250, the form submitted by the court being signed by the foreman and for Lena Evans for punitive damages in the sum of $250 likewise.

From the judgments the railroad company appealed.

*Sam H. West* and *J. C. Hawthorne,* for appellant.

1. There was no evidence to warrant the court in submitting to the jury the question of punitive damages. The third instruction is further erroneous in that it authorized the jury to award punitive damages, if they believed that the agent acted in a wilful or wanton manner, or if he acted without conscious regard of the rights of plaintiffs. 89 Ark. 261; 87 Ark. 123. The testimony is insufficient to sustain a verdict for punitive damages. The element of wilfulness and conscious indifference

to the consequence of the agent's acts is wanting.    53 Ark. 7; 84 Ark. 241; 80 Ark. 158.

2.    Where no actual damage has been sustained, exemplary damages can not be awarded.    84 Ark. 42; 70 S. W. 778; 26 S. W. 945; 34 S. W. 762; 54 S. W. 304; 56 S. W. 949; 74 Ia. 141; 7 N. W. 657; 60 Me. 288.

*Charles E. Robinson*, for appellee.

1.    The court's charge on the question of punitive damages is incorrectly construed by appellant.    It simply means that if the agent wilfully or wantonly persisted in leaving the waiting room without a fire, at the time knowing that his failure to build a fire was causing and would  cause plaintiffs to suffer from the cold, and with conscious indifference to the rights of plaintiffs, the jury might assess punitive damages.    The evidence fully warrants such a finding and the giving of such instruction.    The evidence fully justified a verdict for actual damages, and the mere fact that the jury named the amount they found, "punitive damages," if erroneous, was harmless.

2.    In an action of this kind it does not necessarily follow that, because there was no *finding* of actual damages, punitive damages can not be recovered.    70 Ark. 228; 94 Am. St. Rep. 744; 30 *Id.* 21; 46 So. 237; 73 Fed. 196.

Kirby, J., (after stating the facts).    It is contended that there is no testimony, authorizing the assessment of exemplary damages in either case; and that exemplary damages can not be assessed except in cases where actual damages are shown to have resulted from the injury complained of.

Our court has not determined whether exemplary damages can be recovered except as an incident to a claim or judgment for actual damages, although it was said in *St. Louis, I. M. & S. Ry Co.* v. *Pickett*, 70 Ark. 228:    "Now, the general rule is that a separate and independent action can not be maintained for exemplary or punitive damages, but such damages are received, if at all, as an incident to the claim and judgment for actual damages."

But the facts of that case did not make it necessary to determine the question; neither do we regard it necessary to decide it here.

In *St. Louis, I. M. & S. Ry. Co.* v. *Dysart*, 89 Ark. 261,

the court said: "There is much contrariety of opinion among the authorities as to what is essential in order to justify an infliction of punitive or exemplary damages. But this court is firmly committed to the doctrine that negligence alone, however gross, is not sufficient, and that there must be an added element of intentional wrong, or, what is its equivalent, conscious indifference in the face of discovered peril, from which malice may be inferred. *Railway* v. *Hall*, 53 Ark. 7; *Arkansas & La. Ry. Co.* v. *Stroude*, 77 Ark. 109; *St. Louis, I. M. & S. Ry. Co.* v. *Stamps*, 84 Ark. 241. * * * In other words, to superadd this element of damages by way of punishment, it must appear that the negligent party knew, or had reason to believe, that his act of negligence was about to inflict injury, and that he continued in his course with a conscious indifference to the consequences, from which malice will be inferred."

As said in *St. Louis S. W. Ry. Co.* v. *Myzell*, 87 Ark. 127: "The court fails to find 'that element of wilfulness and conscious indifference to consequences from which malice may be inferred, which is a necessary basis to sustain an action for punitive damages.' " *Railway* v. *Hall*, 53 Ark. 7.

In this case it was shown that there was a fire in the station in the room to which the agent had access, and that he readily agreed to build a fire in the stove in the waiting room when requested to do so by the mother of the plaintiffs, and immediately set about doing it. His effort was unsuccessful, and it is not clear whether he was notified thereafter and again requested to build a fire, although the mother stated that she asked the second time and complained afterwards that there was no fire in the waiting room.

The day was cold, and the waiting room should have been kept comfortably heated, as the law requires, but it was not so apparent that the failure to make the fire as requested would, or might, necessarily result in such serious injury to the children from exposure to the temperature therein for the short time before the train's arrival that the conduct shown on the agent's part amounted to such wilfulness and conscious indifference to consequences from which malice could be inferred, and for that reason the case did not call for or warrant the assessment of exemplary damages. *Arkansas & La. Ry,*

*Co.* v. *Stroud*, 84 Ark. 249; *St. Louis S. W. Ry. Co.* v. *Myzell. supra; Little Rock Ry. & El. Co.* v. *Goerner*, 80 Ark. 158.

The conduct of the agent did not amount to more than gross negligence; and, although appellant was criminally liable for the violation of the statute requiring waiting rooms at the stations of railroads to be kept comfortably heated at all proper times and seasons, it can not be held to the payment of exemplary damages for the said gross negligence of its agent, under our decisions and the circumstances of this case.

The jury found, upon proper instructions, that no actual damages were sustained, and, this court having determined that the proof does not support a verdict for exemplary damages, the judgment is reversed, and the cause dismissed.