The GREAT AMERICAN INSURANCE CO., Plaintiff,

v.

T. J. RATLIFF and Allen Holland, Defendants.

No. LR-64-C-38.

United States District Court
E. D. Arkansas, W. D.

June 23, 1965.

John M. Lofton, Jr., Little Rock, Ark., for plaintiff.

Louis Tarlowski, Little Rock, Ark., Robert N. Hardin and O. Wendell Hall, Jr., Benton, Ark., for defendant T. J. Ratliff.

Ben M. McCray, Benton, Ark., for defendant Allen Holland.

HENLEY, Chief Judge.

This is a suit for a declaratory judgment brought by plaintiff, The Great American Insurance Co., hereinafter the Company, a New York corporation having its principal place of business in that State, against T. J. Ratliff and Allen Holland, individual citizens of Saline County, Arkansas. The amount in controversy, exclusive of interest and costs, is in excess of $10,000.

The purpose of the suit is to secure an adjudication that the Company is not liable to pay any portion of a $15,000 judgment which Ratliff obtained against Holland in 1964 in the Circuit Court of Saline County. That litigation arose out of an episode which took place on the night of August 7, 1963, at a point on Arkansas State Highway No. 183 near Bauxite, Arkansas. On the occasion in question Ratliff was operating his motor vehicle along the highway when it was struck one or more times by a following vehicle. The Ratliff vehicle was overturned and Ratliff sustained personal injuries.

At the time of the episode there was bad blood between Ratliff and Holland, and the former accused the latter of having deliberately driven his automobile into the rear of the Ratliff car for the purpose of killing or injuring Ratliff. On the morning following the accident Ratliff procured the issuance of a warrant for the arrest of Holland on a charge of reckless driving and on a further charge of assault with intent to kill, which latter offense is a felony under Arkansas law. Holland was arrested and was released on bail. On August 10, 1963, Ratliff filed a suit against Holland in the Saline County Circuit Court alleging in substance that Holland had deliberately driven his vehicle into the rear of the Ratliff vehicle. Actual damages in the sum of $100,300 were sought, and Ratliff also sought punitive damages in the sum of $50,000.

Throughout August 1963 Holland was the holder of a standard form automobile liability insurance policy issued by the Company. The limits of that policy as far as personal injuries were concerned were $10,000 for injuries to any one person and $20,000 for injuries resulting from any one occurrence. The policy also provided indemnity for property damage to the extent of $5,000 for any one occurrence.

The policy obligated the Company to pay on behalf of Holland all sums which Holland might become legally obligated to pay as damages for personal injuries or property damage resulting from his ownership, maintenance, or operation of the car described in the policy, and to defend any suit alleging such injuries or damage even though the suit might be groundless, false, or fraudulent. The Company was empowered to investigate and settle any claims or suits against Holland as it might deem expedient.

In the instant case the Company relies on an exclusion clause of the policy which clause provided that the policy did not afford protection with respect to injuries "caused intentionally by or at the direction of the insured."

When Holland was served with summons in the State court litigation, he immediately notified representatives of the Company. An adjuster for the Company took a non-waiver agreement from Holland and proceeded to make an investigation of the case. At the outset of the investigation Holland took the position, which he has consistently maintained, that neither he nor his car was involved in a collision of any kind, intentional or accidental, with the Ratliff vehicle on the night of August 7, 1963, or at any other time.

Having completed its investigation, the Company undertook the defense of the suit against Holland and was perforce required to take the position that Holland was not involved in a collision with Ratliff on the occasion in question. On August 29, 1963, the Company filed on behalf of Holland an answer in the State court denying each and every material allegation of the complaint.

While the record does not expressly so establish, it is reasonably inferable that Ratliff's attorneys in the State court litigation became aware of the exclusion in the Holland policy and realized that if Holland was convicted on the criminal charge or if the civil case was submitted to the jury on an intentional tort theory, the exclusion might be applicable and that a judgment against Holland might not be collectible in the absence of insurance. In any event, the criminal charges against Holland have never been brought to trial, and on March 12, 1964, Ratliff filed an amended and substituted complaint in the State court alleging that the conduct of Holland was reckless or grossly negligent rather than intentional.

On March 19, 1964, the Company commenced this action in this Court alleging the applicability of the exclusion clause and seeking an adjudication of nonliability. While the complaint in the instant case referred to the pendency of the Ratliff-Holland litigation in the Circuit Court and alleged that the State court case had been set for trial on April 10 of that year, the Company did not seek a stay of proceedings in the State court. Rather, on April 8, 1964, Holland filed a motion for a continuance in the State court, referring to the pendency of the declaratory judgment litigation in this Court.

The motion was not granted, and the original case was tried in the Circuit Court on April 10, the trial resulting in a general verdict for Ratliff in the sum of $15,000. On April 17, 1964, judgment upon the verdict was entered. Holland prosecuted an appeal to the Supreme Court of Arkansas, and the judgment of the Circuit Court was affirmed on December 21, 1964. Holland v. Ratliff, 238 Ark. 819, 384 S.W.2d 950.

Prior to the trial in the State court, Ratliff manifested a willingness to accept $10,000 in satisfaction of his claim, and Holland made demand on the Company to settle the case for that sum. That demand was refused by the Company and, as indicated, the judgment rendered against Holland was $5,000 in excess of the policy limit.

It is the position of both defendants here that the case in the State court was submitted to the jury on a negligence theory and not on a theory of intentional tort; that the verdict of the jury and the judgment of the Circuit Court establish the quality of the conduct of Holland as having been negligent rather than intentional, and that the Company now has no right to go behind the State court judgment and undertake to show that the conduct of Holland was such as to make the policy exclusion applicable. Ratliff contends, alternatively, that even if the exclusion is applicable as between the Company and its insured, Holland, it has no applicability to the claim of an injured third person.

Not only do the defendants deny that the Company is entitled to the relief which it seeks; they also have filed counterclaims praying that the Company be adjudged liable to pay the full amount of the Ratliff judgment plus a statutory penalty of 12 percent and a reasonable attorney's fee.[1] The basis of the claim

---

1. The Ratliff counterclaim is in effect a direct action by the judgment creditor of an insured after the issuance of an execution on the judgment and a return of the execution *nulla bona*. Such a direct action after judgment is permitted by Ark.Stats., 1947, Cum.Supp., § 66–4002; see also section 66–4001. Those sections provide in essence that an injured person who obtains a judgment against an insured is subrogated to the insured's rights against his liability insurer, that the insolvency or bankruptcy of the in-

sured does not absolve the insurance company from liability to the injured party, and that the injured party after judgment may maintain a direct action against the insurer. One of the sections requires the issuance and *nulla bona* return of an execution as a condition precedent to direct action; the other simply requires that the judgment remain unsatisfied for 30 days from the serving of notice of entry of judgment upon the attorney for the insured, or upon the insured or upon the insurer. The precise rela-

that the Company is liable for the full amount of the Ratliff judgment rather than for its $10,000 policy limit is the allegation that the Company was guilty of negligence or bad faith in refusing to accept Ratliff's offer to accept $10,000 in settlement of his claim.

The Company naturally denies that defendants are entitled to relief on their counterclaims, and in that connection it denies specifically that it was guilty of either negligence or bad faith in refusing to pay Ratliff $10,000 prior to the State court trial.

The record before the Court consists of the pleadings, a copy of the policy, certain documentary evidence, including a copy of the transcript of the proceedings in the Circuit Court, and the oral testimony of the Company's adjuster, Mr. Washburn, that of Holland and Ratliff, and that of certain other witnesses which the Court finds it unnecessary to mention.

As the Court sees the case the following questions are presented: (1) Does the exclusion upon which the Company relies, if otherwise applicable, apply to a claim advanced by an injured third party who holds a judgment against the insured? (2) If so, may the Company in this action undertake to show without regard to the State court proceedings that Holland's conduct with respect to Ratliff fell within the exclusion? (3) If the second question is answered in the affirmative, then were Ratliff's injuries "caused intentionally by * * * the insured?" (4) Assuming that the Company is liable herein, then does its liability extend beyond the $10,000 policy limit? (5) Again assuming liability, are defendants entitled to an award of penalty and attorney's fee?

## I.

While the questions relating to the limit of the Company's liability including its liability for penalty and attorney's fee are the last of the questions above outlined, the Court finds it convenient to dispose of them first. In answering them the Court will assume for the moment and for purposes of argument only that the Company's defense based on the exclusion clause in the policy has not been sustained.

 The law of Arkansas is that where a liability insurer has an opportunity to settle a claim against the insured within the policy limits and fails to do so, and where the injured party recovers a judgment against the insured in excess of the policy limits, the insurer is liable to the full extent of the judgment if its failure to settle was due either to negligence or bad faith on its part. Dreyfus v. St. Paul Fire & Marine Ins. Co., 238 Ark. 724, 384 S.W.2d 245; Southern Farm Bureau Casualty Ins. Co. v. Hardin, 233 Ark. 1011, 351 S.W.2d 153; Southern Farm Bureau Casualty Ins. Co. v. Parker, 232 Ark. 841, 341 S.W.2d 36; Home Indemnity Company v. Snowden, 223 Ark. 64, 264 S.W.2d 642; Southern Farm Bureau Casualty Ins. Co. v. Mitchell, 8 Cir., 312 F.2d 485. Those authorities establish that the question of negligence or bad faith is one of fact. Obviously the burden of establishing such negligence or bad faith by a preponderance of the evidence is upon the insured and his judgment creditor.

 There is nothing in the record before this Court or in the record made up in the State court in the Ratliff-Holland litigation which would justify this Court in finding that the Company's refusal to pay Ratliff $10,000 in settlement of his claim against Holland was either negligent or *mala fide*. On the contrary, the Court is persuaded that in the circumstances the Company acted with reasonable prudence and in good faith in refusing to accede to Ratliff's demand.

tionship between the two sections may not be entirely clear. It is probable, however, that section 66–4001 which does not require the issuance and *nulla bona* return of a writ of execution relates to policies which provide indemnity against actual monetary loss by the insured, whereas section 66–4002 relates to policies which, like the one in suit, provide indemnity against liability.

Apparently, apart from Ratliff and Holland, there were no eye witnesses to the actual collision which brought about the suit in the State court. Presumably, Holland was as credible a witness as was Ratliff, and Holland was insisting and indeed still insists that his vehicle never struck the Ratliff vehicle. Certainly the Company had a right at that stage of the proceedings to take its insured's word for what happened, and if Holland was telling the truth then he had no liability whatever to Ratliff. It must be remembered that when the compromise offer was made Ratliff had no judgment against Holland and as of that time the Company owed Ratliff no duty whatever. Its sole duty at that time was to Holland, its insured, and certainly Holland should not be heard to say that his insurer was guilty of negligence or bad faith in refusing to pay its policy limit in connection with a collision which Holland said never took place.

■■ It follows that the claim that the Company is liable in excess of its policy limit must be rejected, and in view of that rejection the claim of the defendants for an award of a statutory penalty and attorney's fee must fail also. This is true because in Arkansas no such penalty or fee is allowable unless there is a recovery against the insurance company of the full amount sought by the insured or the injured party. Southern Farm Bureau Casualty Ins. Co. v. Brigance, 234 Ark. 172, 351 S.W.2d 417; Kansas City Fire & Marine Ins. Co. v. Baker, 229 Ark. 130, 313 S.W.2d 846; Liverpool & London & Globe Ins. Co. v. Jones, 207 Ark. 237, 180 S.W.2d 519.

## II.

■ Returning now to the earlier questions presented, the Court cannot accept the contention of Ratliff that the exclusion clause in the policy is inapplicable to him even if it is applicable as between the Company and Holland.

An insurance company certainly has the right to exclude from its policy coverage liability for injuries intentionally caused by the insured, and it would render such an exclusion essentially meaningless to hold that it is unavailable to the insurer as against an injured third party.

■ More than this, under Arkansas law an injured person is merely subrogated to the rights of the insured against his company. He stands in the shoes of the insured, and ordinarily his rights against the insurer are no greater than the rights of the insured himself. Maryland Casualty Co. v. Waggoner, 193 Ark. 550, 101 S.W.2d 451; see also the unreported opinion of this writer in Morris et al. v. United States Fidelity & Guaranty Co., W.D.Ark., El Dorado Division, Docket No. 1024, decided March 11, 1964. Hence, if the exclusion relied on by the Company would operate to absolve it from liability to Holland, it would operate also as a defense to any claim advanced by Ratliff.[2]

## III.

■ It is next necessary to consider whether the Company has a right in this action to have a determination of whether the injuries to Ratliff were caused intentionally by Holland or whether as the defendants contend an independent inquiry as to that question is foreclosed by the proceedings in and judgment of the State court.

At the outset it is clear that the parties to this action are bound by the State court adjudication that Holland did in fact collide with Ratliff and injure him, and that Holland is liable to Ratliff in the sum of $15,000, as found by the Circuit Court jury.

2. The principle which the Court is applying here is not applicable to a situation where after the occurrence of the accident the insured and insurer undertake between themselves to cancel or release the policy or to compromise the insured's potential claim against the insurer. See Spann v. Commercial Standard Ins. Co. of Dallas, 8 Cir., 82 F.2d 593. Such a situation is not presented here.

The transcript of the proceedings in the State court reflects that the case was submitted to the jury in that Court on a theory of simple negligence, and that the Circuit Judge refused to submit to the jury any question of punitive damages. Thus, the jury was not called upon to make any judgment upon the conduct of Holland as being negligent on the one hand or intentional on the other hand; nor was the jury called upon to say whether the ultimate damages to Ratliff were intentionally, as contrasted to accidentally, inflicted. The issues submitted were simple negligence, proximate cause, and compensatory damages.[3]

 It is a well settled principle of Arkansas law that mere negligence, no matter how gross, is not sufficient to justify a jury in awarding punitive damages. Before such damages may be awarded it must appear that the person sought to be charged acted intentionally or maliciously, or that his conduct was such as to manifest a wanton and reckless disregard for the safety of others, such as a continued pursuit of negligent conduct with a conscious disregard for foreseeable injurious consequences. See McGlone v. Stokes, 193 Ark. 1008, 104 S. W.2d 191; Moore v. Wilson, 180 Ark. 41, 20 S.W.2d 310; St. Louis, Southwestern Ry. Co. v. Evans, 104 Ark. 89, 148 S.W. 264.

The Circuit Judge gave no reason for his denial of Ratliff's request for an in-struction on punitive damages, and it must be assumed here that he was of the opinion that there was no substantial evidence that Holland's conduct was of such quality as would justify the submission of that issue.[4]

Assuming that the overall proceedings in the Circuit Court amount to an adjudication that Ratliff's injuries were accidental in nature and were proximately caused by negligence on the part of Holland rather than by intentional misconduct on his part, still in the circumstances the Company is entitled here to endeavor to show that the injuries were intentionally caused by Holland, and that the Company is not liable therefor.

 It is quite true that a judgment of an Arkansas court of competent jurisdiction, such as the Circuit Court of Saline County, is res judicata as between the parties and their privies of all issues adjudicated or which might have been adjudicated in the case; and it is also true that the quality of Holland's conduct was put in issue in the State court litigation in the sense that Ratliff undertook to recover punitive damages and that such recovery was denied.

But, the question of the quality of Holland's conduct was raised in the State court only as an issue in the primary controversy between Ratliff and Holland. That question was not raised, and indeed could not have been raised in that court, as a policy defense avail-

---

3. Ratliff requested 13 instructions to the jury; 11 were given while 2 were refused. Holland requested 4 instructions all of which were refused. Seven of the instructions given were general in nature and included definitions of negligence, ordinary care, and proximate cause. Four of the instructions which were given related to compensatory damages. Ratliff's first requested instruction, which was given, related to the duty of a driver following another vehicle proceeding along the highway in the same direction to yield to the leading driver the superior right to the use of the road; the alleged failure of Holland to observe that duty was the only specific act of negligence to which the attention of the jury was called. Ratliff's eleventh request which was refused dealt with punitive damages and spoke of Holland's alleged "negligent acts" as having been "willfully or wantonly" committed. The requests of Holland proceeded upon the theory that no collision between the two vehicles occurred, or that if there was a collision, it was not a proximate cause of the overturning of the Ratliff vehicle with its consequent injuries to Ratliff.

4. The action of the Circuit Judge in refusing to submit the issue of punitive damages is somewhat puzzling in view of the testimony of Ratliff in the State court that Holland deliberately and repeatedly drove his pickup truck into the rear of the Ratliff vehicle and bumped and pushed that vehicle for about two miles down the highway.

able to the Company as a party adverse to Holland or Ratliff, or both.

When Ratliff filed his suit against Holland and when Holland called on the Company to defend the case, the Company not only had a right to undertake the defense, it was probably under a positive obligation to do so in view of Holland's contention that he had not been involved in a collision with Ratliff. And having undertaken the defense the Company could not assume a position adverse to its insured; certainly it could not have defended the case successfully by saying that the insured injured his adversary intentionally rather than accidentally. Taking the position that it was required to take, the Company could not undertake to bring about a submission of the case on an intentional tort theory. More than this, the Company was required in the circumstances to resist on behalf of Holland any submission of any issue of punitive damages.

The Court thinks it clear that an insurance company has a right to have a claim of nonliability on an automobile policy, such as the claim involved here, litigated in an independent action with the company aligned on one side and the insured and the injured third party, if any, aligned on the other side. And a suit for a declaratory judgment is certainly appropriate for that purpose.

Had this case been tried before the State court case, the question now being discussed could not have arisen. In many instances it is more orderly and efficient and is in the best interests of all parties concerned to have the question of coverage litigated in advance of the trial of the basic controversy between the insured and the injured party. However, the question of coverage need not necessarily be determined in advance of determination of the basic controversy, and the Court is of the opinion that advance determination of the matter of coverage is not desirable where, as here, that question is closely and directly connected with the issue of the insured's personal liability to the injured party.

If this case had been tried first, and if the Court had found that Holland intentionally injured Ratliff, that decision, on settled principles of res judicata and collateral estoppel, might well have established Holland's substantive liability to Ratliff and might have also subjected him to an award of punitive as well as compensatory damages. On the other hand, had the Court found as a fact that there was no collision between the Ratliff vehicle and the Holland vehicle, the same principles might well have destroyed the Ratliff claim entirely.

It is not the function of a federal court in a case of this kind to dispose of a principal controversy between an insured and a third party which is pending in the State court and which could not have been filed originally in the federal court. Hence, this Court would probably not have stayed proceedings in the State court until the trial of this case, had it been asked to do so, and probably would not in any event have tried this case until the State court litigation was disposed of. Of course, had Holland prevailed in the Circuit Court, this action would have become moot.

IV.

■ There remains for consideration the ultimate question of whether Ratliff's injuries were intentionally inflicted by Holland. On that question the Court exercises its own independent judgment and makes its own finding, based on the record before it.

In the course of the trial in the State court Ratliff testified positively that Holland intentionally drove his pickup truck against the Ratliff vehicle, and he repeated that testimony in this Court. As indicated, Holland denied in the State court and denied in his testimony here that the collision occurred.

In view of the State court decision the Court cannot accept Holland's testimony if it were inclined to do so. Since Ratliff testified in both Courts that the collision or collisions were intentional on the part of Holland, the Court finds that Hol-

land intended at least to strike the Ratliff car and did strike it.

The defendants argue, however, that this is not dispositive of the matter. Invoking the well established principle that automobile liability insurance policies are to be liberally construed in favor of coverage and the equally well established principle that the burden is upon an automobile insurer to prove the applicability of an exclusion clause in a policy, defendants assert that it is not enough for the Company to show that Holland intended to strike the Ratliff car, and that the Company must go further and establish by a preponderance of the evidence that when Holland drove into the Ratliff vehicle, he intended to injure Ratliff. And this additional burden the defendants contend that the Company has not met.

The Court is prepared to accept the premises of defendants and in that connection to recognize that there is a distinction between an intention on the part of an operator of a motor vehicle to strike another vehicle and an intention on the part of such operator to inflict injury on the other driver by the striking. But, the distinction is a fine one, and the Court does not think that it can be drawn in this case.

 It is fundamental that the specific intent on the part of an individual in doing or omitting to do a given act frequently cannot be proved by direct evidence. However, the presence or absence of a particular intent can be inferred logically and legally from the facts and circumstances leading up to, surrounding, and following the act or omission in question. And normally a person is presumed to intend the natural and probable consequences of his acts. Thus, if a person in the possession of his faculties intentionally does an act from which injury to another will probably and foreseeably result, it may be inferred that in doing the act the actor intended injury.

From the record as a whole, including the transcript of the State court proceedings, the discovery deposition of Ratliff in the State court, and the testimony of Ratliff taken in this Court, the Court finds that prior to August 7, 1963, Ratliff was calling upon the divorced wife of Holland, and that she on at least one occasion had called upon Ratliff at his place of business. Ratliff's attentions to the former Mrs. Holland had produced serious trouble between the two men characterized by Holland cursing Ratliff on several occasions and at several places, including Ratliff's service station. On one occasion while the former wife was visiting Ratliff at the service station, Holland drove up in front of it, stopped his car, and started inside; the woman was armed and fired a shot at Holland who came on into the station anyway and cursed Ratliff.

On the evening in question Ratliff had been visiting at the home of the former Mrs. Holland, who as of that time was using the name Abels, which was the surname of a man to whom the lady had been married before she married Holland. Ratliff observed Holland drive past the house several times in his car.

Shortly after Ratliff left the home of Mrs. Abels, he observed the Holland car parked on the side of the road, with its lights off. After Ratliff passed the parked car, the lights of the latter were turned on, and it started following Ratliff. After the two vehicles had gone about a quarter of a mile Holland drove his car into the rear of the Ratliff vehicle, an old model car, and began to bump it and push it along the road. Ratliff tried to stop or to get away from the other car, but was unable to do so. After the two vehicles had proceeded for some distance along the highway, they came up behind several cars moving at speeds of about thirty miles an hour. Ratliff feared that he would be driven into the rearmost of those cars, and accordingly he accelerated, managing to get clear of the car in the rear.

Ratliff passed the line of traffic ahead of him and went some distance farther when Holland caught up with him again and struck the rear of Ratliff's car a

severe blow, causing Ratliff to lose control of the vehicle which overturned in the ditch. Ratliff got out of the car and saw the Holland vehicle stopped in the road with Holland at the wheel. Holland thereupon left the scene at a high rate of speed without identifying himself and without making any inquiry as to Ratliff's condition and without offering any assistance to him.

Taking into consideration the ill will existing between the parties, their respective activities immediately preceding the episode here involved, the time of the occurrence, the dangerous nature of Holland's conduct and his persistence in pursuing and striking Ratliff's car, and the conduct of Holland after Ratliff's vehicle finally overturned, the Court simply cannot accept defendants' argument that while Holland may have intended to strike the Ratliff car, he did not intend to injure Ratliff.

In the Court's estimation a preponderance of the evidence shows that Holland lay in wait for Ratliff, pursued him, and drove into the rear of the Ratliff car repeatedly and persistently, finally causing it to overturn; and the Court further finds from a preponderance of the evidence that in so doing Holland intended to inflict at least some degree of injury and damage upon Ratliff and his property. Finally, the Court finds and concludes that Ratliff's injuries and damage were excluded from the coverage of the policy.

A judgment will be entered declaring that the Company is under no obligation to pay any part of the judgment against Holland and dismissing the counterclaim of both Ratliff and Holland.