Diana McSPARRIN *v.* DIRECT INSURANCE

07-934                                                                 283 S.W.3d 572

Supreme Court of Arkansas
Opinion delivered April 24, 2008

*W. Marshall Prettyman*, Legal Aid of Arkansas, for appellant.

*Barrett & Deacon, P.A.*, by: *Barrett Deacon* and *Brandon J. Harrison* for appellee.

Tom Glaze, Justice. On July 19, 2006, at approximately 3:00 a.m., appellant Diana McSparrin repeatedly rammed her car five or six times into Joshua Dark's 1991 GMC Jimmy, which was parked outside Dark's home and unoccupied at the time. McSparrin's successive impacts moved Dark's vehicle a distance of almost fifty feet, until it stopped against a car belonging to McSparrin's ex-boyfriend, Thomas Dennis. Dennis lived next door to the Dark family, and McSparrin testified that she might have been upset with Dennis before she began drinking at Dennis's house, but said that she could not recall ramming into Dark's vehicle because she was intoxicated at the time.

After hearing McSparrin's first impact into Dark's vehicle, Dark's father called 911. Officers from the Fayetteville Police Department arrived at the scene and arrested McSparrin for Driving While Intoxicated after she failed a sobriety test. McSparrin's insurer, Direct Insurance Company (Direct), later filed an action for a declaratory judgment and alleged that because McSparrin had intentionally driven her vehicle into Joshua Dark's vehicle, Direct did not have a duty to defend or indemnify McSparrin under an exclusionary clause in her automobile policy which reads, "[Direct] do[es] not provide Liability Coverage for any covered person who intentionally causes bodily injury or property damage."

The trial court held a one-day bench trial, and found that, although "it is undisputed Ms. McSparrin was drunk," the facts demonstrated that McSparrin intentionally rammed Dark's vehicle. As a result, the trial court further held that the exclusionary clause applied, and that Direct did not have a duty to defend or indemnify McSparrin. McSparrin raises one point on appeal, arguing that the trial court erred because she could not have intentionally rammed Dark's vehicle due to her voluntary intoxication.

The standard of review on appeal from a bench trial is whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence. *See Murphy v. City of West Memphis*, 352 Ark. 315, 101 S.W.3d 221 (2003). This court views the evidence in a light most favorable to the appellee, resolving all inferences in favor of the appellee. *See Ark. Transit Homes, Inc. v. Aetna Life & Cas.*, 341 Ark. 317, 16 S.W.3d 545 (2000).

When construing insurance policies, this court adheres to the rule that, where terms of the policy are clear and unambiguous, the policy language controls, and absent statutory strictures to the contrary, exclusionary clauses are generally enforced according to their terms. *Smith v. Shelter Mut. Ins. Co.*, 327 Ark. 208, 937 S.W.2d 180 (1997). "The insurer has the burden of proving an exclusion." *Ark. Farm Bureau Ins. Fed'n v. Ryman*, 309 Ark. 283, 286, 831 S.W.2d 133, 134 (1992).

This court has not directly addressed whether voluntary intoxication prevents an individual from forming the intent required to trigger an exclusionary clause. Although the parties concede that there are no Arkansas cases directly on point, McSparrin relies on a case decided by the federal district court, *Great Am. Ins. Co. v. Ratliff*, 242 F. Supp. 983 (E.D. Ark. 1965).[1] There, an individual named Allen Holland repeatedly rammed T.J. Ratliff from behind as the vehicles traveled on an Arkansas state highway. Eventually, Ratliff's vehicle turned over, causing him personal injuries. Ratliff filed suit against Holland for damages, and Holland's insurance company filed an action for a declaratory judgment, asserting that it did not have a duty to defend or indemnify Holland due to an exclusionary clause which provided that the policy did not apply to injuries "caused intentionally by or at the direction of the insured." *Id.* at 985. The federal district court found that a preponderance of the evidence showed that Holland "intended to inflict at least some degree of injury and damage upon Ratliff and his property" based on the principle that "a person in the possession of his faculties intentionally does an act from which injury to another will probably and forseeably result."

---

[1] McSparrin also cites *Talley v. MFA Mutual Insurance Co.*, 273 Ark. 269, 620 S.W.2d 160 (1981), for support. However, *Talley* involved the question of reconciling an intentional act — firing a shotgun blast at a car occupied by two individuals — with the unintended result of blindness.

*Id.* at 992. Accordingly, "Ratliff's injuries were excluded from the coverage of [Holland's] policy." *Id.*

McSparrin asserts that the *Ratliff* decision was based on the ill will that existed between the parties, which she contrasts with the facts in her case; she contends there was no evidence of animus between herself and Joshua Dark. Additionally, McSparrin argues that the *Ratliff* case suggests an individual's actions are not intentional if he is not in complete control of his faculties. However, in *Ratliff*, there never was an issue as to whether Holland was "in possession of his faculties" when he rammed Ratliff. Regardless, more convincing and applicable to the present appeal, is the *Ratliff* court's statement that "the presence or absence of particular intent can be inferred logically and legally from the facts and circumstances leading up to, surrounding, and following the act or omission in question." *Id.* Just as the *Ratliff* court held that Holland acted intentionally because he pursued and repeatedly drove into the rear of Ratliff's car, finally causing it to overturn, the trial court in the present case similarly found that after McSparrin's initial impact with Joshua Dark's vehicle, she rammed it five additional times, backing up approximately ten feet and revving the engine before each successive impact.

Direct responds to McSparrin's point for reversal by asserting that the "key legal principles" found in a decision by the Arkansas Court of Appeals in *National Investors Life & Casualty Insurance Co. v. Arrowood*, 270 Ark. 617, 606 S.W.2d 97 (Ark. Ct. App. 1980), are applicable to this appeal. In *Arrowood*, James Arrowood shot his ex-wife in the leg and his insurance company filed an action for a declaratory judgment, alleging that the injuries to Sandra Arrowood were intentionally caused and therefore excluded from coverage by either James or Sandra Arrowood's homeowner's policies. James Arrowood testified that "he had no reason to shoot or kill Sandra," and that he had no recollection of the events surrounding the shooting of his ex-wife, other than taking "a bunch of Valium." *Id.* at 620. The trial court held that the policies' exclusionary clauses were not applicable, and the insurance companies appealed, arguing that the trial court "erred in finding that liability coverage was not excluded under the policy for bodily injury which is either expected or intended from the standpoint of the insured." *Id.* at 621, 606 S.W.2d at 100.

On review, the court of appeals first noted the general rule that coverage exists under insuring contracts and exclusion clauses for the unintended results of an intentional act, but not for

damages assessed because of an injury which was intended to be inflicted. The *Arrowood* court then cited *Ratliff, supra*, to hold that determining whether an act was intentional was "a matter of weighing all the facts and circumstances bearing on the incident in its entirety," and reversed the trial court, noting the long history of James Arrowood's previous acts showing a propensity to violence against his ex-wife. *Id.* at 624, 606 S.W.2d 101. As to James Arrowood's alleged Valium-induced memory loss, the court of appeals stated the following:

> [W]hile no firm conclusions can be founded upon it, even James' professed inability to remember any part of the incident, which we regard as credible, seems more consistent with a finding that the injury was intentional rather than accidental, as even the human mind often obliterates from its memory behavior which it wants to disavow.

*Id.* Further, the court of appeals noted that "James Arrowood's testimony is that he had no recollection of any part of the events of the shooting, so how can he say what his intention was at that exact moment if his memory is so lacking?" *Id.* at 624, 602 S.W.2d at 102.

Similar to James Arrowood, McSparrin contends that her intoxication caused her to "blackout" and that she has no recollection of ramming Dark's vehicle repeatedly. Weighing against her is the fact that she rammed Dark's vehicle until it rested against that of her ex-boyfriend — whom she was upset with — that she giggled as she repeatedly backed up and rammed Dark's vehicle, and the fact that her intoxication was at least not so severe that she was cognizant of the fact that Dark's father had called the police to report her act and called him an "asshole" for doing so before her arrest. And, while McSparrin was arrested for DWI, showing at least some level of intoxication, she later made a recorded statement for her insurance company admitting that her damage to Dark's vehicle was intentional.

McSparrin also contends that the trial court's decision violates public policy, arguing the General Assembly has "endorsed the public policy in favor of compensating victims" because it "has seen fit to mandate automobile insurance coverage while home owners insurance is purely voluntary with the individual." However, Ark. Code Ann. § 27-22-101(a) (Repl. 2008) states that the legislative intent of the Motor Vehicle Liability Insurance

chapter "is not intended in any way to alter or affect the validity of any policy provisions, exclusions, exceptions, or limitations contained in a motor vehicle policy required by this chapter." The trial court's decision that McSparrin's course of conduct showed that she acted intentionally in repeatedly ramming into Dark's vehicle is not clearly against the preponderance of the evidence, nor is it contrary to any public policy our General Assembly has announced. ·

Affirmed.