Ronald J. WHITE and Robert White *v.* Jerry McGOWEN
and Marcia A. McGowan, et al.,

05-412                                                    222 S.W.3d 187

Supreme Court of Arkansas
Opinion delivered January 12, 2006

*Stephen R. Giles, P.A.*, by: *Stephen R. Giles*, for appellants.

*Catlett & Stodola, PLC*, by: *Mark Stodola* and *Paul Charton*, *amicus curiae for appellants.*

*Cypert, Crouch, Clark & Harwell*, by: *Marcus W. Van Pelt*, for appellees.

JIM HANNAH, Justice. Ronald J. White and Robert White appeal a judgment of the Washington County Circuit Court that the manufactured home placed on a lot in the Joy J. Acres subdivision violates a protective covenant that prohibits use of a trailer as a residence. The Whites also appeal an injunction that the home be removed from the lot. Appellees Jerry McGowen, Marcia McGowen, Terry Wallace, Sheila Wallace, Corby Bradt, Cyndi Bradt, Roger Parette, Leigh Parette, Walter Pope, and Dorothy Hope argue that the manufactured home is a trailer prohibited under the Bill of Assurances and Protective Covenants. We find no error and affirm. This case was certified to us by the court of appeals because it presents an issue of first impression. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(1).

*Facts*

On March 5, 2004, Ronald J. White purchased lots 30, 31, and 32 in the Joy J. Acres subdivision. That same month, Ronald moved a 2280 square foot manufactured home on to lot 30. He purchased the lots and placed the manufactured home with the intent of selling the land and home to his brother Robert in what Ronald characterized as a "complete mortgage package." Improvements were made to the home, including a carport, deck, and brick work. After the home was delivered, but before it was set on concrete blocks, appellee McGowen put a copy of the restrictive covenants on the door of the home and subsequently brought suit to have the manufactured home removed.

The Bill of Assurance and Protective Covenants on Joy J. Acres provides that the only "cabins" that may be "erected" are detached single-family dwellings. Further limitations on structures that may be "used" on any lot prohibits the use of a trailer as a residence. The circuit court agreed with appellees and issued an injunction that the home be removed within ninety days.

*Standard of Review*

Where a case is tried with the circuit court sitting as the trier of fact, the standard of review on appeal is not whether there is substantial evidence to support the finding of the court, but whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *Farm Credit Midsouth, PCA v. Reece Contracting, Inc.*, 359 Ark. 267, 196 S.W.2d 488 (2004). A finding is clearly erroneous when, although there is

evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Id.* Disputed facts and determinations of credibility are within the province of the fact-finder. *Id.*

At issue in this case is interpretation of a protective or restrictive covenant on the use of land. Restrictions upon the use of land are not favored in the law. *Forrest Constr. Co., Inc. v. Milam,* 345 Ark. 1, 43 S.W.3d 140 (2001); *Faust v. Little Rock Sch. Dist.,* 224 Ark. 761, 276 S.W.2d 59 (1955). Further, a restrictive covenant will be strictly construed against limitations on the free use of land. *Forrest, supra; Casebeer v. Beacon Realty, Inc.,* 248 Ark. 22, 449 S.W.2d 701 (1970). All doubts are resolved in favor of the unfettered use of land. *Forrest, supra; Casebeer, supra.*

Any restriction on the use of land must be clearly apparent in the language of the asserted covenant. *Forrest, supra; Harbour v. Northwest Land Co., Inc.,* 284 Ark. 286, 681 S.W.2d 384 (1984). Where the language of the restrictive covenant is clear and unambiguous, application of the restriction will be governed by our general rules of interpretation; that is, the intent of the parties governs as disclosed by the plain language of the restriction. *Forrest, supra; Clifford Family LTD Liab.Co. v. Cox,* 334 Ark. 64, 971 S.W.2d 769 (1998) (quoting *Barber v. Watson,* 330 Ark. 250, 953 S.W.2d 579 (1997)).

### Circuit Court's Decision

The circuit court found that Ronald had constructive notice of the restrictive covenant when he purchased the land. The circuit court further found that the restrictive covenant encompassed mobile and manufactured homes. The circuit court concluded that the terms of description changed over the years, but that the term "trailer" in the covenant applied to mobile homes and that a manufactured home was a mobile home. Accordingly, the circuit court issued a mandatory injunction that the house be removed within ninety days.

### The Restrictive Covenants

The parties stipulated that the applicable restrictive covenants regarding the lots at issue are those contained in the Supplemental Bill of Assurance and Protective Covenants filed

with the Washington County Circuit Clerk on October 25, 1967, and recorded in Book 715, page 4. Pursuant to paragraph 2, only detached single-family dwellings may be built on lots 1 through 37. Paragraph 2 also provides that no home of less than 600 square feet, or which costs less than $ 4000 may be built, and then further provides that "the intent and purposes of these covenants are to assure that all dwellings shall be of a quality of workmanship and material substantially the same or better quality than that which can be produced on the date these covenants are recorded." Paragraph 8 prohibits the use of a trailer as a residence.

A restrictive covenant is a private agreement. *Black's Law Dictionary* 373 (8th ed. 2004). *See, e.g., Hutchens v. Bella Vista Village Prop. Owners' Ass'n*, 82 Ark. App. 28, 110 S.W.3d 325 (2003). The intent of the parties governs. *Clifford Family, supra.* Considering the restrictive covenants as a whole, what is clearly apparent in the text of the covenants is that they are intended to maintain the quality of the subdivision by regulating the minimum size of a house and the quality of materials used in construction, as well as construction methods. The intent is to assure that all residences will be similar detached, permanent single-family dwellings. Obviously the quality of the housing affects value and marketability. The question is how a manufactured home fits into the scheme set out in the restrictive covenants.

### Manufactured Homes

This court must decide whether a prohibition against placement of a manufactured home is apparent in the language of the asserted covenant. The covenant prohibits "trailers." As Ronald testified, the term "house trailer" ceased to be used in the industry, and gave way to "mobile home," which in turn later gave way to "manufactured home." In *Wilmoth v. Wilcox*, 734 S.W.2d 656, 658 (Tex. Ct. App. 1987), a case holding that a prohibition against house trailers also prohibited manufactured homes, the court stated that the record in that case showed that the term "house trailer" acquired undesirable connotation, and that in the late 1960s the industry began to use the term mobile home instead, and that later in the 1970s when "mobile home" likewise began to take on an undesirable connotation, the industry began using the term "manufactured homes." *Wilmoth*, 734 S.W.2d at 658. The term "manufactured home" was not in use in the industry in 1967 when the subject Bill of Assurance and Protective Covenants were

drafted and filed. Further in *Wilmoth, supra,* the court stated that "[t]he words used in the restrictive covenant must be given the meaning which they commonly held as of the date the covenant was written, and not as of some subsequent date." *Wilmoth,* 734 S.W.2d at 658. The task is to determine the intent of the framers of the restrictive covenants. *Id.* Looking to a dictionary of the period, we find that a "trailer" is, among other things, a vehicle designed to serve as a "dwelling or business." *Webster's Third New International Dictionary* 2424 (1968). In the present case, the manufactured home was transported on wheels to the site in two parts. A vehicle at the time the covenants were drafted was defined as, among other things, a "conveyance." *Id.* at 2538. There is no question that the manufactured home was built with wheels as a conveyance and hauled to the site rather than being built there. Once conveyed to the site, the wheels, axles, springs, tongue, and hitch were removed, and substantial modifications were made such as the addition of a porch, a carport, and brick skirting. In *Welchman v. Norman,* 311 Ark. 52, 841 S.W.2d 614 (1992), this court considered whether a manufactured home was a prohibited mobile home, holding that it was, and rejected an argument that removal of the wheels and placement of a rock skirting altered its status. We agree that the removal of the wheels, tongue, and other vehicle equipment in this case did not alter the status of the manufactured home. Nor did the addition of the carport or other structures alter the manufactured home's status. Any structure added is simply part of the mobile or manufactured home. *Gem Estates Mobile Home Village Ass'n Inc. v. Bluhm,* 885 So. 2d 435 (Fla. Dist. Ct. App. 2004).

The manufactured home in this case was built off-site and transported to Joy J. Acres in two pieces by truck. It sits upon stacked concrete blocks characterized as "piers." There is no mortar between the blocks. The home is anchored to concrete poured in the soil beneath the home, but it has no perimeter footing as in an on-site built home. The home does not sit on footings. Steel beams run the length of the home and serve as a chassis for over-the-road transport. While the beams serve as support for the floor, if that had been their only purpose, the beams would not have been placed so as to form a chassis to make the home into a vehicle. The circuit court concluded that "the term 'trailer, trailer house, mobile home, manufactured home' apply to what we knew in the 60s as trailers and what is now being called mobile homes and manufactured homes."

■ Other courts have held that a manufactured home is a prohibited "trailer" or "mobile home."[1] The covenant uses the term "trailer," and on that basis alone this case might be affirmed; however, what is apparent in the language of the Bill of Assurances and Protective Covenants is that the framers intended to assure buyers and residents that any homes built would be similar in construction and quality to their homes. A manufactured home does not fit this requirement and is prohibited by the use of the plain and unambiguous term "trailer." We affirm the circuit court's judgment that the manufactured home violates the covenants.

### Abuse of Discretion In Ordering Removal

■ The Whites assert that the circuit court abused its discretion in ordering removal of the house when paragraph 12 of the covenants only provided for prevention of the violation or damages afterward. However, paragraph 12 also provides that an action may be filed in law or equity against the person violating or attempting to violate the covenants. Further, paragraph 12 allows prevention, damages, as well as "other penalties for such violation." The circuit court's actions are contemplated by paragraph 12. There is no merit to the argument the circuit court could not order the home removed.

Affirmed.

---

[1] See, e.g, Fox Farm Landowners' Ass'n v. Kreisch, 285 Mont. 264, 947 P. 2d 79 (1997) (manufactured home is a mobile home prohibited by prohibition against mobile homes and trailers); Barber v. Dixon, 62 N.C. App. 455, 203 S.E.2d 915 (1983) (manufactured home is a prohibited trailer); Valley Motor, Inc. v. Almberg, 106 Nev. 338, 792 P.2d 1131 (1990) (manufactured home prohibited as trailer); Heape v. Broxton, 293 S.C. 343, 360 S.E.2d 157 (1987) (manufactured home is prohibited mobile home); Farnam v. Evans, 306 N.W.2d 228 (S.D. 1981) (manufactured home is a prohibited mobile home); Hicks v. Cox, 978 S.W.2d 544 (Tenn. Ct. App. 1998) (manufactured home is prohibited trailer); Beacon Hill Homeowners' Ass'n v. Palmer Props., Inc., 911 S.W.2d 736 (Tenn. Ct. App. 1995) (trailer means trailer used as a residence, affirming a decision of lower court that manufactured home is a prohibited trailer); Albert v. Orwige, 731 S.W.2d 63 (Tenn. Ct. App. 1987) (manufactured home is prohibited mobile home); Pebble Beach Prop Owners' Ass'n v. Sherer, 2 S.W.3d 283 (Tex. Ct. App. 1999) (manufactured home is prohibited mobile home); Milmouth v. Wilcox, 734 S.W.2d 656 (Tex. Ct. App. 1987) (manufactured home is a prohibited mobile home).