ROYAL OAKS VISTA, LLC, and John Hawks, Jr.  *v.*
James MADDOX, Jean Maddox, Lynn A. Rice, Gary L. Yeager and Mary L. Yeager

07-542                                          271 S.W.3d 479

Supreme Court of Arkansas
Opinion delivered January 17, 2008

*Holly L. Meyer*, for appellants.

*Richard H. Mays*, for appellees.

JIM HANNAH, Chief Justice. This appeal concerns the validity and enforcement of a bill of assurance for Royal Oaks Vista subdivision filed in 1972 and an attempted replat of the subdivision in 2004. Appellants are Royal Oaks Vista, LLC and John Hawks, Jr. (collectively referred to as ROV), and appellees are James Maddox, Jean Maddox,[1] Lynn Rice, Gary L. Yeager, and Mary L. Yeager. The Cleburne County Circuit Court found that the 2004 replat was invalid and enforced the restrictions contained in the original bill of assurance. In addition, the circuit court ordered removal of all structures built in violation of the restrictions. ROV argues that the circuit court erred in finding that the replat was invalid. Specifically, ROV contends that the doctrine of laches should have

---

[1] At various times in the record, Jean Maddox is referred to as Joan Maddox. We will refer to this party as Jean Maddox, as this is the spelling on the cover of the record.

been applied, that the temporary septic easement across lot 56 did not violate the restrictive covenant, and that the covenant restricting the use of lots to residential purposes was an unreasonable restraint on the alienation of property.

In January 1972, a plat and bill of assurance were filed for Royal Oaks Vista subdivision located in Cleburne County. The plat laid out twenty-one lots and streets for the subdivision. The bill of assurance provided that all lots were to be residential, that no lots were to re-subdivided, and that "[n]o noxious or offensive trade or activity shall be carried on upon any lot, nor shall anything be done thereon which may be or become an annoyance to the neighborhood." Further, the bill of assurance provided that "[n]o structure shall be erected, altered, placed or permitted to remain on any residential building plot other than a single family dwelling, not to exceed two stories in height, and a private garage and any outbuildings incidental to the residential use of the lot."

Appellee Lynn Rice and her then-husband acquired lot 1 in the subdivision in 1987. Rice acquired sole ownership of the lot in 1997. In April 1993, appellees Jean and James Maddox purchased lots 2, 3, and 4 in the subdivision. ROV acquired the remaining lots (lots 5 through 21) by deed dated August 12, 2004. On August 18, 2004, ROV filed both a replat of the subdivision and an amended bill of assurance for the new subdivision. The replat created lots 7 through 18 and lot 56 from lots 5 through 21 of the original subdivision.

While ROV was preparing the replat and new bill of assurance for the subdivision, it was proceeding with the development of streets and other infrastructure in the subdivision. In addition, ROV proceeded with the sale of four lots. Among the lots sold by ROV was replatted lot 8, which was sold to David Tindall. Tindall built a house on replatted lot 8 that was later conveyed to appellees Mary and Gary Yeager. The Maddoxes and Rice became aware of ROV's activities during July and August 2004, when ROV was seeking to have the original streets in the subdivision declared abandoned by the Greers Ferry City Council. The city council granted ROV's request in August 2004.

The Maddoxes, Rice, and the Yeagers filed a complaint, later amended, seeking injunctive relief and damages against ROV on September 20, 2005. They asserted in the complaint that the replat and new bill of assurance were in violation of the original bill of assurance's prohibition against resubdividing lots. The Yeagers

added an additional claim for damages against David Tindall, contending that if the Maddoxes and Rice were successful in their claim against ROV, Tindall breached the warranties in the deed conveying the property to the Yeagers, as the conveyance occurred after the replat and new bill of assurance were filed.

ROV denied the material allegations of the complaint. It also claimed that the original bill of assurance violated the rule against perpetuities and was an unreasonable restraint on alienation. ROV asserted the affirmative defenses of laches, waiver, and estoppel, and it filed a counterclaim for declaratory relief, asserting that the original bill of assurance was an unreasonable restraint on alienation.

After a hearing, the circuit court found that the replat was in violation of the original bill of assurance. The circuit court also found that the defense of laches did not apply and that the rule of perpetuities was not violated. The court granted the request for an injunction, and it ordered that the original bill of assurance would control the subdivision. Further, ROV was ordered to remove any structures built in violation of the restrictive covenants. The court specifically reserved the claims of Mary and Gary Yeager.[2]

ROV appealed the circuit court's decision to the Arkansas Court of Appeals, which affirmed the circuit court in an unpublished opinion. *Royal Oaks Vista, LLC v. Maddox*, CA 06-738 (Ark. App. May 9, 2007). ROV petitioned this court for review, which we granted pursuant to Ark. Sup. Ct. R. 2-4. Upon the grant of a petition for review, we consider the case as though it had been originally filed in this court. *Rodriguez v. Ark. Dep't of Human Servs.*, 360 Ark. 180, 200 S.W.3d 431 (2004). We affirm the circuit court and affirm the court of appeals.

Where a case is tried with the circuit court sitting as the trier of fact, the standard of review on appeal is not whether there is substantial evidence to support the finding of the court, but whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *White v. McGowen*, 364

---

[2] We recognize that the order appealed from specifically reserves the Yeagers' claims and does not contain an Ark. R. Civ. P. 54(b) certification; however, this case is nevertheless appealable under the provisions of Ark. R. App. P. 2(a)(6) in that the order granted an injunction directing ROV to remove the structures found to be in violation of the restrictive covenants. *See East Poinsett County Sch. Dist. No. 14 v. Massey*, 317 Ark. 219, 876 S.W.2d 573 (1994).

Ark. 520, 222 S.W.3d 187 (2006). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Id*. Disputed facts and determinations of credibility are within the province of the fact-finder. *Id*.

At issue in this case is the interpretation of a protective or restrictive covenant on the use of land. Restrictions upon the use of land are not favored in the law. *Id*.; *Forrest Constr. Co. v. Milam*, 345 Ark. 1, 43 S.W.3d 140 (2001). Further, a restrictive covenant will be strictly construed against limitations on the free use of land. *White, supra*; *Forrest, supra*. All doubts are resolved in favor of the unfettered use of land. *White, supra*; *Forrest, supra*.

Any restriction on the use of land must be clearly apparent in the language of the asserted covenant. *White, supra*; *Forrest, supra*. Where the language of the restrictive covenant is clear and unambiguous, application of the restriction will be governed by our general rules of interpretation; that is, the intent of the parties governs as disclosed by the plain language of the restriction. *White, supra*; *Forrest, supra*.

The circuit court concluded that, pursuant to Ark. Code Ann. § 18-12-103 (Repl. 2003),[3] ROV's actions in replatting the lots in Royal Oaks Vista subdivision and in filing a new bill of assurance without the consent of appellees Maddox and Rice constituted an "abject violation" of the original 1972 bill of assurance and plat for the subdivision. ROV does not challenge these findings; rather, ROV contends that the circuit court erred in ruling that the appellees' claims were not barred by the doctrine of laches. In *Summit Mall Co. v. Lemond*, 355 Ark. 190, 206, 132 S.W.3d 725, 735 (2003), we stated:

> This court has summarized the laches defense by stating that it is based on the equitable principle that an unreasonable delay by the party seeking relief precludes recovery when the circumstances are

---

[3] Arkansas Code Annotated § 18-12-103 provides:

No restrictive or protective covenants affecting the use of real property nor any instrument purporting to restrict the use of real property shall be valid or effective against a subsequent purchaser or owner of real property unless the restrictive or protective covenants or instrument purporting to restrict the use of real property is executed by the owners of the real property and recorded in the office of the recorder of the county in which the property is located.

such as to make it inequitable or unjust for the party to seek relief. *See Anadarko Petroleum Co. v. Venable,* 312 Ark. 330, 850 S.W.2d 302 (1993). The laches defense requires a detrimental change in the position of the one asserting the doctrine, as well as an unreasonable delay by the one asserting his or her rights against whom laches is invoked. *See Worth v. Civil Serv. Comm'n of El Dorado,* 294 Ark. 643, 746 S.W.2d 364 (1988). *See also Goforth v. Smith,* 338 Ark. 65, 991 S.W.2d 579 (1999).

In addition, the application of the doctrine to each case depends on its particular circumstances. *Cochran v. Bentley,* 369 Ark. 159, 251 S.W.3d 253 (2007) (citing *Self v. Self,* 319 Ark. 632, 893 S.W.2d 775 (1995)). The issue of laches is one of fact. *Self, supra.* A reviewing court does not reverse the circuit court's decision on a question of fact unless it is clearly erroneous. Ark. R. Civ. P. 52(a); *Self, supra.*

ROV argues that the doctrine of laches should apply in this case because Rice and the Maddoxes were aware of the replat and new bill of assurance in June, July, and August 2004, yet they did not file suit until September 2005. ROV asserts that, as a result of the appellees' failure to act as they observed the development of the property based on the replat, ROV had good reason to believe that the appellees were abandoning their right to challenge the replatting of the subdivision and, therefore, ROV continued to develop the property. Appellees argue that, in this case, there was no detrimental change in ROV's position in reliance upon the action or inaction of the appellees because most of the work done in the subdivision was done prior to ROV's filing of the replat and new bill of assurance in August 2004.

The record reflects that Rice was the Recorder/City Treasurer for the City of Greers Ferry during the summer of 2004 and, as such, was aware of ROV's request to have the streets declared abandoned. Rice testified that, upon learning of ROV's plans, she voiced her objections at a city council meeting. She testified she was aware that, in June 2004, crews had begun clearing trees, building roads, and installing electrical and water lines. Rice stated that she realized that the bill of assurance for the subdivision was being violated. Further, Rice testified that much of the work, including one house, was completed by August 2004. Rice said that, at that time, she "just kind of watched the development," but did not take any action because she did not have the funds to hire an attorney and because it appeared from the replat that she and the Maddoxes were no longer in the subdivision.

James Maddox testified that he first became aware of ROV's intention to replat the subdivision when he saw a survey crew. He stated that one house, as well as other work, had been completed by the time the city council voted to abandon the original subdivision streets in August 2004. Maddox testified that, when the work began, he did not understand that the other lots in the subdivision were going to be replatted.

David Tindall testified that he had built three homes in the Royal Oaks Vista subdivision. He stated that he began construction on a house on lot 8 in June 2004. Tindall testified that he started building a house on lot 12 in August 2004 and a house on lot 14 in December 2004.

Tindall sold the house on lot 8 to Gary Yeager. Yeager testified that he moved into the house on September 19, 2004, and that the house had been under construction "quite some time" before he moved into it. Yeager said that he thought he had put the contract in on the house on August 19, 2004, and at that time, the house was ninety-nine percent complete.

Tim Tyler testified that he is a civil engineer and that he and his various companies have been involved in the development of approximately 100 subdivisions. In early 2004, Tyler became interested in acquiring undeveloped lots (lots 5 through 21) in the original Royal Oaks Vista subdivision. Tyler acquired the lots and thereafter conveyed the lots to ROV by warranty deed dated August 12, 2004. Tyler testified that electrical lines and television cable lines were laid adjacent to the replatted streets by August 2004.

With respect to ROV's laches argument, the circuit court made the following findings:

> The Court finds that when plaintiffs Maddox and Rice learned of the intent of Mr. Tyler and his company, Royal Oaks Vista, LLC, to replat and resubdivide the subdivision in July and August 2004, they vigorously protested the petition to abandon streets in the original subdivision before the Greers Ferry City Council. In addition, the Replat and the New Bill of Assurance for the subdivision were filed by Royal Oaks Vista, LLC on August 18, 2004, very soon after the plaintiffs learned of Mr. Tyler's plan to resubdivide. Further, many of the improvements (electrical, cable and water lines and road grading) were installed by the defendant Royal Oaks Vista, LLC by the end of August 2004. A number of the four

houses that have been built on the replatted subdivision were commenced (and one house was fully constructed) by August 2004 or within a short time thereafter. Plaintiffs, who were uncertain of the legal status of defendants' actions, hired counsel and filed suit within a reasonable time. Defendants have not been prejudiced by an unreasonable delay of the plaintiffs in asserting their rights under the original Bill of Assurance, but only by defendants' own precipitous actions in the face of original restrictive covenants.

We cannot say that the circuit court's findings are clearly erroneous. Laches requires a demonstration of prejudice to the party alleging it as a defense resulting from a plaintiff's delay in pursuing a claim. *Goforth v. Smith*, 338 Ark. 65, 991 S.W.2d 579 (1999). Here, ROV claims that it was prejudiced because it spent approximately $200,000 in infrastructure prior to the appellees' filing suit in September 2005. However, the circuit court found, and ROV does not directly dispute, that most of this work was completed by August 2004, shortly after the replat and new bill of assurance were filed. ROV has failed to show that it suffered or changed its position as a result of the appellees' lack of diligence or delay in assertion of their rights. Accordingly, we hold that the circuit court did not err in finding that the doctrine of laches was inapplicable in this case.

ROV next argues that the circuit court erred in ruling that the temporary septic easement across lot 56 violates the restrictive covenant. ROV claims that the temporary easement cannot be considered as violative of the restrictive covenant allowing only residential use of the lots because the septic easements are clearly necessary for residential purposes and must be considered "incidental to the residential use of the lot" as allowed by the covenant.

In *Hays v. Watson*, 250 Ark. 589, 466 S.W.2d 272 (1971), this court affirmed an injunction prohibiting the use of a lot subject to restrictive covenants limiting lots to "residential use" as a septic system to serve an adjacent mobile home park. In the instant case, the circuit court concluded that *Hays* was controlling and ruled that the use of any lots in Royal Oaks Vista subdivision as part of a septic system serving other lots would not be a "residential use" and would violate the restrictive covenant allowing on each lot only "a single family dwelling, not to exceed two stories in height, and a private garage and any outbuildings incidental to the residential use of the lot." ROV claims that *Hays* is distinguishable

from the instant case because it involved the construction of a sewage disposal system to accommodate property outside of the platted area. Further, ROV states that in the *Hays* case, the restrictive covenants, which allowed only single family dwellings and provided that no individual sewage disposal system was permitted on any lot unless it met approval by the state, were interpreted to mean that a single family residence on each lot can have only a single disposal system such that the use of the lots for the septic disposal system to serve lots outside the platted area was prohibited. Therefore, ROV states, because there is no restrictive covenant regarding individual sewage disposal systems in the instant case and the temporary system is not serving lots outside of the platted area, the *Hays* case is not controlling.

We are not persuaded by ROV's argument. The plain language of the restrictive covenant limits the use of each lot to a single family dwelling, not to exceed two stories in height, and a private garage and any outbuildings incidental to the residential use of the lot. However, lot 56 is not being used as a residential lot; rather, it is being used as a community septic system to service several lots. The restrictive covenants in both the original bill of assurance and in the new bill of assurance provide that all lots shall be used as residential lots. The circuit court did not err in finding that lot 56 was in violation of the restrictive covenant.

Alternatively, ROV argues that the covenant prohibiting such temporary easements is void as an unreasonable restraint on the alienation of property. ROV cites *City of Little Rock v. Joyner*, 212 Ark. 508, 206 S.W.2d 446 (1947), to support its argument that conditions have changed in the subdivision and it would be oppressive and inequitable to enforce the restriction because, without using lot 56 as a septic system, ROV cannot sell the other lots in the subdivision. Here, ROV has failed to show that there has been a change in conditions sufficient to warrant invalidation of the covenant at issue. The requirements that the lots be used only for residential purposes simply does not injure or harass anyone owning property subject to the covenant. *See Cochran v. Bentley*, 369 Ark. 159, 251 S.W.3d 253 (2007). The circuit court concluded, and ROV does not dispute, that ROV was aware of the conditions and the requirements when it purchased the property. In sum, ROV has failed to adduce facts that there has been a change in conditions sufficient to justify modification or elimination of the conditions.

For the foregoing reasons, we affirm the circuit court.

Affirmed.

GLAZE, J., not participating.