SLIP OPINION

Cite as 2017 Ark. 42

# SUPREME COURT OF ARKANSAS

**No.** CV–16–127

|  |  |
|---|---|
|  | **Opinion Delivered:** February 16, 2017 |
| GARY DYE AND LINDA DYE, INDIVIDUALLY AND ON BEHALF OF PERSONS SIMILARLY SITUATED<br><br>APPELLANTS<br><br>V.<br><br>DIAMANTE, A PRIVATE MEMBERSHIP GOLF CLUB, LLC<br><br>APPELLEE | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63CV-12-90-2]<br><br>HONORABLE GARY M. ARNOLD, JUDGE<br><br><u>AFFIRMED</u>. |

**SHAWN A. WOMACK, Associate Justice**

The appellants are class representatives of a group of property owners located in Hot Springs Village. They are appealing an order from the circuit court of Saline County declaring the terms of a covenant between the appellants and Appellee enforceable and denying disgorgement of fees. The appellants have eight points on appeal.[1] We affirm the judgment of the trial court on all points.

---

[1] (1) Finding that the transfer-fee covenants in the supplemental declarations requiring all property owners to pay the privately owned Club transfer fees whenever a Diamante home or lot is sold or otherwise transferred are enforceable and not in violation of Arkansas law; (2) Failing to find that the tie-in covenants are unenforceable because they constitute an unreasonable restraint on alienation of the homes and lots in the two Diamante subdivisions; (3) Finding that the Club's bylaws, as they may be amended from time to time, are incorporated by reference into the supplemental declarations as a matter of law; (4) Finding that the Club's rules and regulations, as they may be amended from time to time, are incorporated by reference into the supplemental declarations as a matter of law; (5) Finding that the supplemental declarations authorize the Club's failure to collect dues for

*Facts and Procedural Background*

In 1994, Cooper Communities, Inc. ("Cooper") and Club Corporation of America announced plans to build a private golf course with 450 dwelling units that would have access to the course. The private golf club ("Diamante") was meant to be the premier amenity associated with the development. Each of the properties located in the development was subject to covenants contained in supplemental declarations ("Declarations"), which were filed in the land-records office in Saline County in 1997.

The Declarations require that all property owners in the development become "full" golf members. Further, all property owners must pay monthly dues, pay a transfer fee anytime the properties are sold, and give Diamante lien and foreclosure rights to collect unpaid fees. The portions requiring the payment of monthly dues, mandatory golf membership, and granting the club lien rights are referred to as "Tie-in" provisions. The Declarations also authorize the club to create other categories of membership which may be made available to the general public. The Declarations also state that the provisions would be subject to the club's "Article, By-laws, if any, and Rules and Regulations." In 1994, Diamante adopted rules and regulations that authorized the creation of other golf

_____

10 years from the purchasers of the 93 deferred lots, and that appellants are barred by statutes of limitation from using the sale of the deferred lots in defense against the Club's use of the tie-in covenants; (6) Finding that the supplemental declarations authorize the Club to create golf memberships for nonproperty owners and give golf privileges to nonproperty owners, and that appellants are barred by statutes of limitation from using those practices in defense against the Club's use of the tie-in covenants; (7) Failing to find that the Club has breached its duty to property owners contained in the supplemental declarations to maintain the sand traps on the Diamante golf course for the use of the property owners; and (8) Not declaring that, in law or in equity, the tie-in covenants contained in the supplemental declarations were unenforceable by Diamante.

memberships that were less privileged than the full golf memberships. The club also later adopted by-laws in 2006.

In 2012, the class representatives, Gary and Linda Dye, filed suit in the circuit court of Saline County against Diamante seeking a declaratory judgment that the provisions contained in the Declarations were unenforceable. In 2013, the Saline County Circuit Court authorized the certification of a class of 450 property owners excluding the Appellee, Cooper Land Development, Inc., and its affiliates. On November 25, 2013, DC Member Group Inc., a nonprofit corporation founded by three Diamante property owners, filed a complaint to intervene in the suit and asked the court to declare the tie-in provisions valid and enforceable. On April 28, 2014, the appellants filed a fourth amended and supplemented petition for declaratory judgment and asked the court to declare the covenants contained in the Declarations unenforceable; order the club to disgorge dues paid during the suit; mandate that dues recovered go directly to the maintenance and upkeep of the course; and obtain applicable attorney's fees.

The circuit court declared that the supplemental provisions were valid and enforceable and that there had been no breach of the Declarations; it also denied the disgorgement of any fees. The appellants appealed the court's decision and their eight points of appeal are addressed below.

*Standard of Review*

The standard of review for an appeal from a bench trial is whether the court's findings were clearly erroneous or clearly against the preponderance of the evidence. *McSparrin v. Direct Ins.*, 373 Ark. 270, 272, 283 S.W.3d 572, 574 (2008); *Poff v. Peedin*, 2010 Ark. 136



at 5, 366 S.W.3d 347, 350. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Arkansas Transit Homes, Inc. v. Aetna Life & Cas.*, 341 Ark. 317, 320, 16 S.W.3d 545, 547 (2000).

## I. *Transfer Fees*

The appellants argue in their first point that the circuit court erred in holding that the transfer fee contained in the Declarations is not a violation of Ark. Code Ann. § 18-12-107. The statute provides, "A transfer fee covenant recorded with respect to real property in this state after July 27, 2011, [d]oes not run with the title to the real property; and [it] [i]s not binding upon or enforceable at law or in equity." Ark. Code Ann. § 18-12-107(b)(1)(A)–(B) (Repl. 2015) (internal marks omitted). The statute further specifically states, "[t]his section does not validate a transfer fee covenant recorded in this state before July 27, 2011." Ark. Code Ann. § 18-12-107(b)(2) (Repl. 2015).

Here, the Declarations were properly recorded in Saline County in 1997, long before July 27, 2011. Further, the Declarations clearly impose a transfer fee whenever any of the lots are sold. The statute destroys a contractual right to apply transfer fees to property, and is therefore not remedial or procedural. The appellants argue that the statute grants the court discretion to declare invalid any transfer fees that were created before the act. However, the statute by its very terms does not specifically invalidate transfer fees recorded before the act. Therefore, we hold that the court did not err in declaring the transfer fees enforceable.

SLIP OPINION

## II. *Restraint on Alienation*

The appellants argue in their second point that the court erred in holding that the Declarations were not an unlawful restraint on the alienation of property. The purpose behind prohibiting restraints on alienation of property "is to insure that property is reasonably available for development by forbidding restraints that keep property from being used for a lengthy period of time." *Broach v. City of Hampton*, 283 Ark. 496, 498, 677 S.W.2d 851, 854 (1984). If a covenant assessment is vague or indefinite, it is a restraint on alienation. *See Kell v. Bella Vista Vill. Prop. Owners Ass'n*, 258 Ark. 757, 761-63, 528 S.W.2d 651, 654-55 (1975).

In *Kell* this court held that assessments under a homeowner's association were not an unreasonable restraint on alienation when they contained a formula for determining the amount of the assessment. *Id.* at 764, 528 S.W.2d at 655. There we found that the assessment was specifically for maintenance and improvements and further specified that funds would be used for "the payment of taxes and insurance thereon, and repair, replacement, and additions thereto, and for the cost of labor, equipment, materials, management and supervision thereof." *Id.* at 763, 528 S.W.2d at 655. This purpose allows a formula to be determined which would prevent an arbitrary or capricious assessment. *Id.* at 763-64, 528 S.W.2d at 655 (citing *Peterson v. Beekmere, Inc.*, which held an assessment is void when it is not required to benefit the subservient estate. 117 N.J. Super. 155, 174 (1971)).

In the instant case, the Declarations state that the monthly golf membership dues will be collected for the "use, enjoyment, and maintenance of the club." The Declarations also specifically state "the amount of said monthly dues will be determined solely by the Club

in accordance with its Articles, By-Laws, if any, and Rules and Regulations." Appellants argue that these two provisions are too vague and indefinite for a formula to be crafted to determine the amount of the assessment. However, Diamante's ability to determine the amount of the dues would be limited by their purpose, which is for the use and maintenance of the club. This would prevent Diamante from collecting dues completely unrelated to that specific purpose. We therefore hold that the circuit court did not err when it did not find that the assessment was an unlawful restraint on alienation.

The dissent relies on *Broach v. City of Hampton* to determine that the transfer fees in this case were unreasonable. In that case we recognized that a restraint on alienation is a provision that by its terms penalizes the power to transfer property, such as a provision in a deed that prohibits the property from being alienated in the future. 283 Ark. 496, 500, 677 S.W.2d 851, 854 (1984); Restatement (First) of Property: Definitions § 404 (1944). Direct restraints, as the dissent correctly points out, are subject to a reasonableness standard where the court weighs the benefit against the burden imposed. Restatement (Third) of Property: Direct Restraints on Alienation § 3.4 (2000) However, an indirect restraint is a provision which does not directly prohibit the alienation of property but has the incidental effect of limiting the use of the property, including the amount realized upon sale. Restatement (Third) of Property: Indirect Restraints on Alienation and Irrational Servitudes § 3.4 (2000). Such a servitude is otherwise not invalid, unless it lacks a rational basis. *Id.*

Here, the transfer requirement does not directly prohibit the transfer of property. It will only affect the amount received by an owner at sale, and there is a rational basis to support the provision. If the dissent were correct, then virtually all transfer fees would be


invalid because the former property owner would no longer share in the benefit associated with the land.

### III. *Incorporation of By-laws as Well as Rules and Regulations*

The appellants argue in their third and fourth points that the circuit court erred when it determined that the club's by-laws, rules, and regulations were incorporated into the Declarations. For simplicity, we will address both of their points below. The Arkansas Code provides that no restrictive covenant will be effective unless it is "recorded in the office of the recorder of the county in which the property is located." Ark. Code Ann. § 18-12-103(b) (Repl. 2015). Further, "[a]ny restriction on the use of land must be clearly apparent in the language of the asserted covenant." *Cochran v. Bentley*, 369 Ark. 159, 166, 251 S.W.3d 253, 260 (2007). However, this court has also stated that "[w]hen a contract refers to another writing and makes the terms of that writing a part of the contract, the two documents become a single agreement between the parties and must be construed together." *Ingersoll-Rand Co. v. El Dorado Chem. Co.*, 373 Ark. 226, 233, 283 S.W.3d 191, 196 (2008).

This court has also specifically stated that restrictive covenants may be amended later. *Eagle Mortg. Corp. v. Johnson*, 244 Ark. 765, 770, 427 S.W.2d 550, 553 (1968). Further, in *Kell* this court cited cases from other jurisdictions that permit a recorded instrument to incorporate an unrecorded document. *See* 258 Ark. at 764, 528 S.W.2d at 655 ("and the cases from other jurisdictions cited therein"); s*ee also Moorestown Mgmt., Inc. v. Moorestown Bookshop, Inc.*, 249 A.2d 623, 628 (N.J.Sup. Ct. Ch. Div. 1969) (By-laws were validly incorporated into a lease by reference.); *Rodruck v. Sand Point Maint. Comm'n*, 295 P.2d 714,

719 (Wash. 1956) (Deeds validly contained a covenant which was incorporated into a corporation's by-laws.).

Here both the by-laws and rules and regulations were validly incorporated in the covenant. The Declarations repeatedly mention that property owners would also be subject to the provisions contained in both documents. The case law from both this court and other jurisdictions indicates that potential buyers are on notice of unrecorded documents that are specifically referenced within properly recorded instruments, and that this is a standard practice. This rule does not change with respect to recorded covenants affecting land. While the by-laws were not created in this case until 2006, nine years after the Declarations were filed, the by-laws, as they relate to the present controversy, simply provide details and amendments to issues that were specifically contemplated and mentioned in the Declarations as filed in 1997. The dissent argues that allowing Diamante to reference its by-laws and regulations without recording them undermines the purpose of the recording requirement. However, the recording act is designed to put subsequent purchasers on notice of interests affecting real property. There is clearly enough information in the Declarations to allow a purchaser to make an inquiry as to their contents. Therefore, we hold that the by-laws and rules and regulations were sufficiently referenced in the Declarations to be incorporated.

IV. *Deferment of Dues*

The appellants argue in their fifth point that the trial court erred when it held that the Declarations did not prevent the club from deferring dues, and that challenges otherwise are barred by the statute of limitations. The Arkansas Code requires actions based on a breach of a written covenant to be brought within five years. Ark. Code Ann. § 16–56–115

(Repl. 2005). Declaratory relief is "dependent on and not available in the absence of a justiciable controversy," and is "intended to supplement rather than supercede ordinary causes of action." *Martin v. Equitable Life Assur. Soc. of the U.S.*, 344 Ark. 177, 181, 40 S.W.3d 733, 736 (2001). Lastly, the statute of limitations begins to run when there is a "complete and present cause of action," which is, absent concealment or wrong, when the "injury occurs, not when it is discovered." *Gunn v. Farmers Ins. Exch.*, 2010 Ark. 434, at 8, 372 S.W.3d 346, 352; *Hunter v. Connelly*, 247 Ark. 486, 491–92, 446 S.W.2d 654, 657 (1969).

The trial court found that it was generally known by 2003 that the club was actively deferring dues. Assuming, *arguendo*, that 2003 is the date for the tolling of the statute, the latest that suit could have been brought was in 2008. The Dyes brought their suit in 2012, four years after the statute had run. The court therefore did not err in holding any action based on Diamante's deferment of dues was time-barred.

Alternatively, even if the limitation period had not run, the deferment of dues would not be a breach of the Declarations. We have previously stated that, "[w]here the language of the . . . covenant is clear and unambiguous, application of the [covenant] will be governed by our general rules of interpretation; that is, the intent of the parties governs as disclosed by the plain language of the restriction." *White v. McGowen*, 364 Ark. 520, 522, 222 S.W.3d 187, 189 (2006). However, we cautioned that the courts will not enforce covenants when "they do not apply alike to all units in the same subdivision enjoying the benefits to the common properties." *Kell*, 258 Ark. at 764, 528 S.W.2d at 655.

Here, the plain language of the Declarations states, "The monthly dues shall commence and become due and payable as to each lot or living unit on the date fixed by the Club for commencement." This language clearly gives the club the authority to vary the commencement date between lots. The appellants argue that earlier provisions in the Declarations that require each property owner to have a full golf membership and pay monthly dues conflict with the former provision. However, this provision does not exempt properties from becoming golf members, but only allows the club to state when their obligations to pay become due. Further, the deferred lots did not have access to the course during their deferment period and therefore did not violate *Kell* by allowing owners who are not paying dues to have the same benefits as those who are. We affirm the circuit court and hold that the deferment of dues was not a violation of the Declarations.

V. *Public Golf Memberships*

For their sixth point, the appellants argue that the trial court erred in holding that the club was authorized to create other golf memberships that do not run with the land and that any claim otherwise is barred by the statute of limitations. We previously addressed the applicable limitations period above in regards to a breach of the Declarations.

In the instant case, the language in the Declarations clearly puts a purchaser on notice that the club may create "categories of membership, not running with the land, which may be made available to the general public." The appellants argue this language does not mean that the club could make other golf memberships. However, the Declarations clearly put the appellants on notice that the full golf membership is subject to the rules and regulations of the club. The trial court found that a version of the club's rules and regulations existed as

early as 1994. Furthermore, those documents allow the club to create "other categories of golf memberships but not at the same level of privilege as Full Golf Members or that run with the land." Given the authority in both the rules and regulations as well as the Declarations, the circuit court was correct that the Declarations authorize the club to create other categories of golf membership. Lastly, as the trial court noted, the club had actively created other forms of golf membership since 1998. Any claim for an alleged breach had long been time-barred.

The appellants point out that several pieces of sales material specifically stated that use of the golf course would be limited to the property owners and their guests. They allege that allowing non–property–owning individuals to use the course is a fundamental breach of the covenant and therefore the tie–in provisions cannot be enforced by the club. However, those provisions within the sales materials are neither contained nor referenced within the Declarations. Therefore, they did not become part of the agreement between the parties and are not terms under the covenant.

## VI.  *Course Maintenance*

The appellants argue in their seventh point that the club materially breached its duties to maintain the golf course by not maintaining the sand traps. Under Arkansas law, "[w]hen performance of a duty under a contract is contemplated, any non–performance of that duty is a breach." *Zufari v. Architecture Plus*, 323 Ark. 411, 420, 914 S.W.2d 756, 761 (1996). We have also further emphasized that "[a] 'material breach' is a failure to perform an essential term or condition that substantially defeats the purpose of the contract for the other party. A material breach excuses the performance of the other party." *TXO Prod. Corp. v. Page*

SLIP OPINION

*Farms, Inc.*, 287 Ark. 304, 307, 698 S.W.2d 791, 793 (1985) (citing Restatement (First) of Contracts: *Material Breach or Non-Performance of One Party as a Discharge of the Duty of the Other* § 397 (1932)).

The appellants point out that Diamante had previously set aside $300,000 to repair the course but deferred spending the funds in response to the current suit. They allege the deferment of those dues was a material breach of Diamante's covenant to maintain the course. However, there is nothing in the Declarations that required the club to spend a certain amount on course maintenance. Further, at trial, the club manager testified that the course was recognized as being one of the top ten in Arkansas. Multiple other property owners testified that Diamante was a good course. The appellants' witness introduced pictures of several bunkers on the course that appear to be in states of disrepair. However, that same witness later testified that he considered Diamante to be a "good" course, and he confirmed that Diamante had been making efforts to deal with other maintenance issues on the course. Even if the facts alleged were considered a breach, they most certainly would not be so material as to defeat the purpose of paying dues and render the covenants unenforceable. We therefore find no error below.

VII.  *Declaration That the Tie-in Covenants Were Unenforceable*

The appellants in their last point argue that, based on the accumulation of their points above, the court erred when it did not declare the provisions at issue within the Declarations to be unenforceable. Specifically, the appellants complain that the club breached the Declarations by not holding the clubhouse for the exclusive use of the property owners. However, the Declarations and the rules and regulations clearly allow the club to create

other classes of membership that may have access to the club facilities. Further, the Declarations specifically allow the club to charge individual user fees for the amenities and services provided through the facilities. Therefore, the trial court did not err in holding the covenants enforceable.

The dissent repeatedly points out that the Declarations are restrictive covenants that are disfavored under Arkansas Law. *Royal Oaks Vista, L.L.C. v Maddox*, 372 Ark. 119, 123, 271 S.W.3d 479, 482 (2008). However, we have stated that restrictions on the *use* of land are disfavored under the law. *Id.*; *Cochran v. Bentley*, 369 Ark. 159, 166, 251 S.W.3d 253, 260 (2007) (Provision which prohibited nonresidential structures on residential lots was a restrictive covenant.); *White v. McGowen*, 364 Ark. 520, 522, 222 S.W.3d 187, 189 (2006) (Provision which stipulated that only single-family dwellings may be built on a lot was a restrictive covenant.). Here, none of the provisions in the Declarations prohibit how the individual lots may be used but only require each lot owner to pay monthly dues and a transfer fee upon sale. Therefore, the covenants contained in the Declarations are not restrictive covenants and are not subject to such strict scrutiny.

We therefore find no error in the circuit court's decision and affirm the judgment on all counts.

Affirmed.

Special Justice DAVID STERLING joins.

BAKER and HART, JJ., dissent.

WOOD, J., not participating.

13

**JOSEPHINE LINKER HART, Justice, dissenting.** I dissent. En route to affirming a clearly erroneous decision by the Saline County Circuit Court, the majority has made egregious errors of law and has engaged in the kind of legislating from the bench that has been rarely seen in this state. The majority has eviscerated our recording statutes, likely introducing chaos into a system that has served this state for more than a century and a half. I will discuss each of these points in detail, beginning with the majority's most fundamental error of law.

The majority's handling of appellant's first point, while partially correct, is at the same time incomplete and misleading. The majority is correct when it holds that the transfer-fee covenant is not invalidated by section 18-12-107. The plain wording of the statute makes it applicable only to covenants recorded after its effective date. Accordingly, there is no need to discuss rules of construction regarding retroactivity because this portion of appellant's argument involves statutory construction.

Section 18-12-107, entitled "Transfer fee covenants prohibited" states in pertinent part:

> (b)(1) A transfer fee covenant recorded with respect to real property in this state after July 27, 2011:
>
> (A) Does not run with the title to the real property; and
>
> (B) Is not binding upon or enforceable at law or in equity against:
>
> (i) The real property; or
>
> (ii) A subsequent owner, purchaser, or mortgagee of an interest in the real property.
>
> (2) This section does not validate a transfer fee covenant recorded in this state before July 27, 2011.

SLIP OPINION

The first rule in statutory construction is to construe it just as it reads, giving the words their ordinary meaning in common language, giving effect to every word. *MacSteel Div. of Quanex v. Ark. Oklahoma Gas Corp.*, 363 Ark. 22, 210 S.W.3d 878 (2005). When the language of the statute is plain and unambiguous, there is no need to resort to rules of statutory construction. The plain wording of section 18-12-107 makes it applicable only to transfer covenants recorded after July 27, 2011. However, it is error to end the analysis here.

This point on appeal addresses a specific finding of the circuit court, "The Supplemental Covenants' imposition of transfer fees is not a violation of Arkansas law." The argument challenges this finding in its entirety. Accordingly, while the plain language of section 18-12-107 does not provide the appellant with the complete relief that appellant sought, it did not foreclose it either. Section 18-12-107(b)(2) states, "This section does not validate a transfer fee covenant recorded in this state before July 27, 2011." So, while the statute renders no transfer covenants recorded after July 27, 2011, valid, covenants recorded prior to that date may or may not be valid.

Under Arkansas law, to be valid, any restraint on alienation of property must be reasonable. *Broach v. City of Hampton*, 283 Ark. 496, 677 S.W.2d 851 (1984). A restraint on alienation may be upheld only if the reason for imposing it outweighs the evils associated with interfering with the power of alienation. *Id.*

In the case before us, the balancing does not preponderate in favor of the appellee. The transfer fee does not directly relate to any positive benefit enjoyed by all of the property owners in a way that is equivalent to the benefit realized by the property owners in *Kell v.*

*Bella Vista Village POA*, 258 Ark. 757, 528 S.W.2d 651 (1975). However, there is no indication in the majority opinion that it looked beyond the portion of section 18-12-107 that was favorable to the appellee.

Had the burden/benefit balancing been undertaken, the requirement that the *seller* pay a $5000 transfer fee does not correspond to an equivalent benefit. Obviously, after the seller pays the transfer fee, he or she no longer has the privileges of a Full Golf Member, so he or she enjoys no benefit in terms of a better maintained golf course or clubhouse. *Cf. Kell, supra,* (property-association fees closely tied to maintenance of common areas while the property owner lived in the community).

For appellant's second point, she argues that the circuit court erred in failing to find that the tie-in covenants are unenforceable because they constitute an unreasonable restraint on alienation of the homes and lots in the two Diamante subdivisions. Citing *Kell, supra,* appellant asserts that the dues-assessment covenants do not meet the requirements that would allow a court to find that they qualified as a "reasonable restraint on alienation" of the homes and lots in the Diamante subdivisions. Further, the property-owners assessment in *Kell* "passed muster" because "they were collected for a specified purpose, had a clear-cut formula for setting the amount of dues, the collection of dues added value to each lot, and the property owners had input into the amount they paid in dues." *Id.* Conversely the situation in the case before us fails to comport with the *Kell* criteria because the dues were collected by a privately owned club that is not located within either subdivision, the property owners have no ownership interest in the clubhouse or golf course, and the amount of the dues was not subject to a particular formula, limit, or requirement that the amount

be justified. Additionally, appellant argues that the transfer-fees and Full Golf Membership dues requirements have not added value to the property but have instead had a deleterious effect on real estate located within the Diamante subdivisions.

The majority errs when it resolves this point by holding—or more accurately finding—that "the circuit court did not err when it did not find that the assessment was <u>an unlawful</u> restraint on alienation.[1]" The circuit court made no such finding. While it did find the covenants enforceable, it never found that the transfer fees and club dues were not restraints on alienation. While it might be said that, implicit in the circuit court's ruling, the transfer fees were valid and enforceable and that they were *reasonable*, it is simply wrong for the majority to infer that the circuit court meant that they were not a restraint on alienation. However, the fact remains that the majority made a finding of fact that the circuit court did not. That is *not* appropriate for an appellate court under the standard of review.

Arkansas law does not favor restrictions on land. *Royal Oaks Vista, L.L.C. v. Maddox*, 372 Ark. 119, 271 S.W.3d 479 (2008). A restriction on land is anything that impairs the free enjoyment and free alienation of the property. In this case, this includes the requirement that a Full Golf Membership be paid for by the lot owner whether he or she plays golf or not and the requirement that transfer fees be paid whenever a lot is sold.

The majority asserts that my analysis of this point is incorrect because it would render "virtually all transfer fees . . . invalid." I submit that is precisely what the General Assembly

---

[1]There is a kind of puzzling logic to the majority's finding. Carried to its logical extreme, one could say that the circuit court did not err by not finding that the moon is made of green cheese. While logically correct, the statement would not be a proper holding.

did by enacting section 18-12-107, albeit too late to provide relief for the property owners in the Diamante subdivisions.

Because appellant's third and fourth points are so closely related, I will discuss them together. For her third point, appellant argues that the circuit court erred in finding that the Club's bylaws, as they may be amended from time to time, are incorporated by reference into the supplemental declarations as a matter of law. Appellant makes essentially the same argument with regard to the Club rules and regulations. Appellant asserts that the bylaws did not exist until 2006 and were not recorded in the Saline County land records. Most of the real estate transactions in the Diamante subdivisions occurred before 2006. Consequently, citing Arkansas Code Annotated section 14-15-404, appellant argues that the bylaws cannot be enforced against the property owners. Appellant contends that the rules and regulations have been amended six times and are likewise not recorded in the Saline County land records.

There is no dispute that the supplemental declarations refer to the Diamante bylaws and rules and regulations "if any." However, that does not mean that the bylaws and rules and regulations as amended can affect an interest in real property. To affect real property, they *must* be recorded. The reason for our recording laws is to put purchasers on notice of legal encumbrances to the real estate that they are considering buying. Ark. Code Ann. § 14-15-404. The supplemental declaration that supposedly incorporates by reference the Club's bylaws and rules and regulations states,

> Upon the sale of a lot in Diamante Subdivision or other transfer of title to another after the initial sale of the lot by the Developer, a transfer fee or deposit shall be paid to the Club, such fee to be fixed, established and collected from time to time by the Club, its successors or assigns. The transfer fee or deposit covers the transfer of the

Full Golf Membership which is appurtenant to the title. Such transfer fee may be decreased or increased in the sole discretion of the Club, its successors and assigns or designated agent, in accordance with the Club's Articles, Bylaws, if any, and Rules and Regulations as revised or amended by the Club or any owner of the Club in its sole discretion.

However, as the majority acknowledges, the bylaws did not exist until 2006 and the above-quoted supplemental declaration also predated the Club's rules and regulations. Accordingly, what the majority claims was incorporated by reference did not exist when many of the lots were purchased, including the real estate owned by seven witnesses who testified regarding this point in appellant's case-in-chief. The majority correctly notes that Arkansas Code Annotated section 18-12-103(b) requires that an instrument restricting the use of land is not effective unless it is recorded. The majority cites no Arkansas cases that make restrictions valid without recording them in accordance with section 18-12-103(b). The failure to cite a single Arkansas case in support of this point is no mystery. None exist. Section 18-12-103(b) states

(b) An instrument creating a restrictive covenant is not effective to restrict the use or development of real property unless the instrument purporting to restrict the use or development of the real property is executed by the owners of the real property and recorded in the office of the recorder of the county in which the property is located.

The General Assembly could not be more clear; because the bylaws and Club rules and regulations were not recorded, they are *not* effective to impose restrictions on the property in the Diamante subdivisions.

The majority finds no error with its cancellation of this subsection—by judicial fiat—because "[t]here is clearly enough information in the Declarations to allow a purchaser to make an inquiry as to their contents." The majority misses the point that even with the most diligent of inquiries, he or she cannot know how they will be bound by restrictions

that *did not exist*. All of the witnesses who testified in appellant's case purchased their property before the bylaws were drafted. Before the majority erased section 18-12-103(b) by judicial fiat, the property owners were protected.

The majority has also eviscerated Arkansas Code Annotated section 14-15-404. In pertinent part it states,

> (b) No deed, bond, or instrument of writing for the conveyance of any real estate, or by which the title thereto may be affected in law or equity, made or executed after December 21, 1846, shall be good or valid against a subsequent purchaser of the real estate for a valuable consideration without actual notice thereof or against any creditor of the person executing such an instrument obtaining a judgment or decree which by law may be a lien upon the real estate unless the deed, bond, or instrument, duly executed and acknowledged or proved as required by law, is filed for record in the office of the clerk and ex officio recorder of the county where the real estate is situated.

Apparently, from the majority's perspective, routine transactions in real estate have become a little too boring since 1846, so it was time to shake things up. The majority's finding—they mislabel it a holding—that the bylaws and rules and regulations were "sufficiently referenced in the Declarations to be incorporated," is simply wrong. It ignores the plain language of our recording statute that limits "constructive notice" to recorded documents. Ark. Code Ann. § 14-15-404(a)(1).

Furthermore, the law regarding incorporation by reference cited by the majority did not concern real property, much less restrictive covenants that run with the land. *Ingersoll-Rand Co. v. El Dorado Chem. Co.*, 373 Ark. 226, 283 S.W.3d 191 (2008), is a contract case involving a customer who sued a repair company. My research tells me that the reason why the majority has not cited an Arkansas property case regarding incorporation by reference is that none exist. The majority's citation of *Eagle Mortgage Corp. v. Johnson*, 244 Ark. 765,

427 S.W.2d 550 (1968), is of no moment because the right of a majority of landowners to amend restrictive covenants was recorded as part of the subdivision's bill of assurances. *Johnson* does not even suggest that the amended covenants would be valid without being recorded—the recorded covenant allowing amendment of the covenants in *Johnson* expressly states that the amended covenants "shall be binding from and after the date it is duly filed for record in Saline County, Arkansas." 244 Ark. at 766, 427 S.W.2d at 551.

It is noteworthy that the majority has eschewed the ususal practice of appellate courts of this state to recount in its opinion the evidence presented in a merits hearing. Here there was 443 pages of trial testimony that was scarcely mentioned. This omission is, particularly remarkable because it provides a factual predicate that makes the majority's holding well-neigh impossible to justify.

In her case-in-chief, appellant presented the testimony of several property owners. Sam D. Thompson, Jr., a home owner since 1998, Jim Bodge, a home owner since 1998, Alan Bowles, a home owner since 2002, Jean Conner, a home owner since 2000, Ron Heinrich, a home owner since 2002, Tim Bumpas, a property owner since 1994, John Schoonover, a home owner since 2000, and Dan McCabe, a property owner since 1999. All of these witnesses purchased their lots prior to *existence* of the Club's bylaws, so of course they could have no notice of what the bylaws would contain. Accordingly, the majority's conclusion that "there is clearly enough information in the Declarations to allow a purchaser to make an inquiry as to their contents" rings hollow. All of the witnesses in appellant's case, when they were purchasers, necessarily found nothing because *the bylaws did not exist*.

Appellant argues for her fifth point that the circuit court erred in finding that the supplemental declarations authorize the Club's failure to collect dues for 10 years from the purchasers of the 93 deferred lots and that appellant is barred by statutes of limitation from using the sale of the deferred lots as a defense against the Club's use of the tie-in covenants. Arguing further, appellant contends that it is undisputed that Diamante failed to collect dues on 92 lots for a period of ten years. Additionally, appellant asserts that the circuit court erred in finding that this point was barred by the statute of limitations applicable to written contracts because statutes of limitation do not bar defenses, and this issue had already been rejected by the circuit court when Diamante filed its motion to dismiss.

The majority's holding that the statute of limitations that is applicable to written contracts reveals that it completely misunderstands the legal principles involved in this case. This is a question that involves property law, not contract law. The distinction is profound because these are two distinct bodies of law.

If there is to be a restriction that runs with the land, it must be clearly apparent to the landowner. *Harbour v. Nw. Land Co., Inc.*, 284 Ark. 286, 681 S.W.2d 384 (1984). Moreover, a restrictive covenant must be strictly construed against limitations on the free use of land, and all doubts are resolved against the restriction. *Royal Oaks Vista, LL.C.*, *supra*. When the provisions of a restrictive covenant have not been adhered to, the covenant may be deemed to be abandoned and thus unenforceable. *Gentry v. Stricklin*, 249 Ark. 791, 461 S.W.2d 580 (1971); *Moore v. Adams*, 200 Ark. 810, 141 S.W.2d 46 (1940). Restrictions that are deemed abandoned do not simply spring back to life because they are not challenged within five years.

The majority is simply wrong when it finds that the recorded supplemental declarations "clearly gives the club the authority to vary the commencement date between lots." It is difficult to imagine what the majority finds "clear." The section in the supplemental declarations that it relies on states,

> The afore mentioned monthly dues shall commence on a date fixed by the Club; provided however, no dues shall be applicable until the first day of the month preceding the date that either the Clubhouse or the Golf Course is first made available for use to the members and will be applicable to each lot in the Diamante Subdivision when it is first sold by the Developer. The monthly dues shall commence and become due and payable as to each lot or living unit on the date fixed by the Club for commencement.

In construing the paragraph in question, I note that it does *not* expressly state that dues may be deferred. This fact does not comport with the previously stated law that to be upheld, the restriction must be clearly apparent. *Harbour, supra*. Restrictions on land must be strictly construed *against* limitations on the free use of land, and all doubts are resolved *against* the restriction. *Royal Oaks Vista, L.L.C., supra*.

While the supplemental declarations do not expressly give Diamante the right to defer dues, the supplemental declarations do expressly state, "Title to each lot in the Diamante Subdivisions which is subject to assessment by the Club shall include a Full Golf Membership in the Club . . . and such Membership shall be appurtenant to and shall pass with the title to each lot" and "Every person or entity who is the record owner of a lot or who is purchasing from the Developer a lot in Diamante Subdivision shall have a Full Golf Membership" and "Each Diamante Lot Owner shall be required to pay the monthly dues for a Full Golf Membership." Accordingly, the language that the majority finds so clear could also be interpreted to give Diamante only the authority to determine which day of

the month the dues become payable after the real estate is acquired. Moreover, when the supplemental declarations were filed, the golf club was not fully functional. Accordingly, another reasonable interpretation of the language is that the dues will become payable once the Club declares that golf course and club house are open and ready to provide the amenities that the Full Golf Members will be required to pay for.

Thus, the language is at least ambiguous and ambiguities in written instruments are construed *against* the drafter. *See, e.g.*, *Elcare, Inc. v. Gocio*, 267 Ark. 605, 593 S.W.2d 159 (1980). More importantly, as noted previously, restrictive covenants on land are not favored in the law and covenants must be construed *against* a restriction. *Royal Oaks Vista, L.L.C.*, *supra*.

Furthermore, the interpretation of the supplemental declarations espoused by the majority does not make equitable its practice of deferring dues from some property owners while enforcing the burden on other property owners. By the majority's reading of the declarations, there is created an equitable servitude[2] that treats the similarly situated burdened properties unequally. Such an interpretation is repugnant to the very concept of equitable servitudes, which are enforceable only if the common scheme of development is strictly adhered to. *Gentry, supra*; *Moore, supra*.

It is not disputed that the burden of paying the monthly dues for Full Golf Memberships was unequally applied to at least 92 of the 450 lots in the Diamante subdivisions. The requirement to pay dues, which stood at $475 per month at the time of

---

[2] Because these restrictions do not touch and concern the lots themselves, they are considered equitable servitudes. *Tull v. Moxhay*, 2 Phillips 774, 41 Eng. Rep. 1143 (1848). The principle difference is that these restrictions are enforced at equity.

trial, is substantial, particularly in light of the fact that the covenants gave Diamante a right to foreclose on the property if the assessed dues were not paid. As of the hearing, 269 lot owners were assessed for Full-Golf Memberships to pay for a club that, according to the general plan of development, would be supported by 450 lot owners. The inequity of this situation is manifest. Accordingly, the majority has no basis in law of fact for affirming the circuit court's finding that the requirement to pay Full Golf Membership due is enforceable.

While I find no merit in appellant's fifth and sixth points, I nonetheless cannot subscribe to the majority's rationale in disposing of these points. Regarding the creation of lesser categories of club membership, the majority is at least partially incorrect in the way that it handles this point. The sales material that the majority refers to is, at best, part of the sales contract, which merges into the deed. *See Surf Club, Inc. v. Lubin*, 282 Ark. 150, 666 S.W.2d 405 (1984). I likewise reject appellant's seventh point wherein she argues that the circuit court erred in failing to find that the Club has breached its duty to properly maintain the golf course., resolution of this point lies in resolving conflicting testimony between Club manager Madison Pope, who disputed the accusations that the course was not being properly maintained and appellant's witnesses to the contrary. Generally, we defer to the circuit court sitting at the trier of fact to resolve matters of credibility. *Baptist Health v. Murphy*, 2010 Ark. 358, 373 S.W.3d 269. It is not clear why the majority cited the portion of Pope's testimony in which he admitted that the Club had amassed $300,000 from dues and refrained from spending it on maintenance of the course because of the ongoing litigation. Holding funds needed to maintain the golf course would not certainly not be justified because there is pending litigation.

Finally, the majority acknowledges that it is true that covenants that restrict the use of land are disfavored in the law and must be strictly construed against the restriction. However, without a single citation to authority it asserts that the covenants in question are not subject to these well-established principles of property law. The majority boldly proclaims that "none of the provisions in the Declarations prohibit how the individual lots may be used." Is not the quiet enjoyment of one's home a "use" of the land? Here, the owners of 269 lots face the threat of eviction if they fail to pay an ever-increasing monthly golf membership whether they set foot in the golf club or not, while neighboring lot owners are not similarly bound by the covenant. It is not apparent to me how the majority's decision comports with equity or justice.

In time, I am certain that the legislature will repair the damage that the majority has done to our recording statutes. Today's majority opinion states that every real estate purchase may be affected by "incorporating by reference" documents that not only are unrecorded, but *do not even exist*. While our recording system will likely be rescued by swift legislative action, I am not so sanguine about the lives and the fortunes of the people trapped in the Diamante subdivisions.

I respectfully dissent.

BAKER, J., joins.

*James A. Armogida*, for appellant.

*Rose Law Firm, a Professional Association*, by: *Richard T. Donovan* and *Betsy Turner*; and *McMillan, McCorkle & Curry, LLP*, by: *J. Philip McCorkle*, for appellee.