SHAWN A. WOMACK, Associate Justice hThe appellants are class representatives of a group of property owners located in Hot Springs Village. They are appealing an order from the circuit court .of Saline County declaring the terms of a covenant between the appellants and Appellee enforceable and denying disgorgement of fees. The appellants have eight points on appeal.[1] We affirm the judgment of the trial court on all points. 19Facts and Procedural Background In 1994, Cooper Communities, Inc. (“Cooper”) and Club Corporation of America announced plans to build a private golf course with 450 dwelling units that would have access to the course. The private golf club (“Diamante”) was meant to be the premier amenity associated with the development. Each of the properties located in the development was subject to covenants contained in supplemental declarations (“Declarations”), which were filed in the land-records office in Saline County in 1997. The Declarations require that all property owners in the development become “full” golf members. Further, all property owners must pay monthly dues, pay a transfer fee anytime the properties are sold, and give Diamante lien and foreclosure rights to collect unpaid fees. The portions requiring the payment of monthly dues, mandatory golf membership, and granting the club lien rights are referred to as “Tie-in” provisions. The Declarations also authorize the club to create other categories of membership which may be made available to the general public. The Declarations also state that the provisions would be subject to the club’s “Article, Bylaws, if any, and Rules and Regulations.” In 1994, Diamante adopted rules and regulations that authorized the creation of other golf | amemberships that were less privileged than the full golf memberships. The club also later adopted by-laws in 2006. In 2012, the class representatives, Gary and Linda Dye, filed suit in the circuit court of Saline County against Diamante seeking a declaratory judgment that the provisions contained in the Declarations were unenforceable. In 2013, the Saline County Circuit Court authorized the certification of a class of 450 property owners excluding Cooper Land Development, Inc., and its affiliates. On November 25, 2013, DC Member Group Inc., a nonprofit corporation founded by three Diamante property owners, filed a complaint to intervene in the suit and asked the court to declare the tie-in provisions valid and enforceable. On April 28, 2014, the appellants filed a fourth amended and supplemented petition for declaratory judgment and asked the court to declare the covenants contained in the Declarations unenforceable; order the club to disgorge dues paid during the suit; mandate that dues recovered go directly to the maintenance and upkeep of the course; and obtain applicable attorney’s fees. The circuit court declared that the supplemental provisions were valid and enforceable and that there had been no breach of the Declarations; it also denied the disgorgement of any fees. The appellants appealed the court’s decision and their eight points of appeal are addressed below. Standard of Review The standard of review for an appeal from a bench trial is whether the court’s findings were clearly erroneous or clearly against the preponderance of the evidence. McSparrin v. Direct Ins., 373 Ark. 270, 272, 283 S.W.3d 572, 574 (2008); Poff v. Peedin, 2010 Ark. 136 at 5, 366 S.W.3d 347, 350. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. Arkansas Transit Homes, Inc. v. Aetna Life & Cas., 341 Ark. 317, 320, 16 S.W.3d 545, 547 (2000). I. Transfer Fees The appellants argue in their first point that the circuit court erred in holding that the transfer fee contained in the Declarations is not a violation of Ark. Code Ann. § 18-12-107. The statute provides, “A transfer fee covenant recorded with respect to real property in this state after July 27, 2011, [d]oes not run with the title to the real property; and [it] [i]s not binding upon or enforceable at law or in equity.” Ark. Code Ann. § 18-12-107(b)(l)(A)-(B) (Repl. 2015) (internal marks omitted). The statute further specifically states, “[t]his section does not validate a transfer fee covenant recorded in this state before July 27, 2011.” Ark. Code Ann. § 18—12— 107(b)(2) (Repl. 2015). Here, the Declarations were properly recorded in Saline County in 1997, long before July 27, 2011. Further, the Declarations clearly impose a transfer fee whenever any of the lots are sold. The statute destroys a contractual right to apply transfer fees to property, and is therefore not remedial or procedural. The appellants argue that the statute grants the court discretion to declare invalid any transfer fees that were created before the act. However, the statute by its very terms does not specifically invalidate transfer fees recorded before the act. Therefore, we hold that the court did not err in declaring the transfer fees enforceable. | (ill. Restraint on Alienation The appellants argue in then-second point that the court erred in holding that the Declarations were not an unlawful restraint on the alienation of property. The purpose behind prohibiting restraints on alienation of property “is to insure that property is reasonably available for development by forbidding restraints that keep property from being used for a lengthy period of time.” Broach v. City of Hampton, 283 Ark. 496, 498, 677 S.W.2d 851, 854 (1984). If a covenant assessment is vague or indefinite, it is a restraint on alienation. See Kell v. Bella Vista Vill. Prop. Owners Ass’n, 258 Ark. 757, 761-63, 528 S.W.2d 651, 654-55 (1975). In Kell this court held that assessments under a homeowner’s association were not an unreasonable restraint on alienation when they contained a formula for determining the amount of the assessment. Id. at 764, 528 S.W.2d at 665. There we found that the assessment was specifically for maintenance and improvements and further specified that funds would be used for “the payment of taxes and insurance thereon, and repair, replacement, and additions thereto, and for the cost of labor, equipment, materials, management and supervision thereof.” Id. at 763, 528 S.W.2d at 655. This purpose allows a formula to be determined which would prevent an arbitrary or capricious assessment. Id. at 763-64, 528 S.W.2d at 655 (citing Petersen v. Beekmere, Inc., which held an assessment is void when it is not required to benefit the subservient estate. 117 N.J.Super. 155, 174, 283 A.2d 911 (1971)). In the instant case, the Declarations state that the monthly golf membership dues will be collected for the “use, enjoyment, and maintenance of the club.” The Declarations also specifically state “the amount of said monthly dues will be determined solely by the Club Rin accordance with its Articles, By-Laws, if any, and Rules and Regulations.” Appellants argue that these two provisions are too vague and indefinite for a formula to be crafted to determine the amount of the assessment. However, Diamante’s ability to determine the amount of the dues would be limited by their purpose, which is for the use and maintenance of the club. This would prevent Diamante from collecting dues completely unrelated to that specific purpose. We therefore hold that the circuit court did not err when it did not find that the assessment was an unlawful restraint on alienation. The dissent relies on Broach v. City of Hampton to determine that the transfer fees in this case were unreasonable. In that case we recognized that a restraint on alienation is a provision that by its terms penalizes the power to transfer property, such as a provision in a deed that prohibits the property from being alienated in the future. 283 Ark. 496, 500, 677 S.W.2d 851, 854 (1984); Restatement (First) of Property: Definitions § 404 (1944). Direct restraints, as the dissent correctly points out, are subject to a reasonableness standard where the court weighs the benefit against the burden imposed. Restatement (Third) of Property: Direct Restraints on Alienation § 3.4 (2000) However, an indirect restraint is a provision which does not directly prohibit the alienation of property but has the incidental effect of limiting the use of the property, including the amount realized upon sale. Restatement (Third) of Property: Indirect Restraints on Alienation and Irrational Servitudes § 3.4 (2000). Such a servitude is otherwise not invalid, unless it lacks a rational basis. Id. Here, the transfer requirement does not directly prohibit the transfer of property. It will only affect the amount received by an owner at sale, and there is a rational basis to support the provision. If the dissent were correct, then virtually all transfer fees would be ^invalid because the former property owner would no longer share in the benefit associated with the land. III. Incorporation of By-laws as Well as Rules and Regulations The appellants argue in their third and fourth points that the circuit court erred when it determined that the club’s by-laws, rules, and regulations were incorporated into the Declarations. For simplicity, we will address both of their points below. The Arkansas Code provides that no restrictive covenant will be effective unless it is “recorded in the office of the recorder of the county in which the property is located.” Ark. Code Ann. § 18-12-103(b) (Repl. 2015). Further, “[a]ny restriction on the use of land must be clearly apparent in the language of the asserted covenant.” Cochran v. Bentley, 369 Ark. 159, 166, 251 S.W.3d 253, 260 (2007). However, this court has also stated that “[w]hen a contract refers to another writing and makes the terms of that writing a part of the contract, the two documents become a single agreement between the parties and must be construed together.” Ingersoll-Rand Co. v. El Dorado Chem. Co., 373 Ark. 226, 233, 283 S.W.3d 191, 196 (2008). This court has also specifically stated that restrictive covenants may be amended later. Eagle Mortg. Corp. v. Johnson, 244 Ark. 765, 770, 427 S.W.2d 550, 553 (1968). Further, in Kell this court cited cases from other jurisdictions that permit a recorded instrument to incorporate an unrecorded document. See 258 Ark. at 764, 528 S.W.2d at 655 (“and the cases from other jurisdictions cited therein”); see also Moorestown Mgmt., Inc. v. Moorestown Bookshop, Inc., 104 N.J.Super. 250, 249 A.2d 623, 628 (N.J.Sup. Ct. Ch. Div. 1969) (By-laws were validly incorporated into a lease by reference.); Rodruck v. Sand Point Maint. Comm’n, 48 Wash.2d 565, 295 P.2d 714, 719 (1956) (Deeds validly contained a covenant which was incorporated into a corporation’s by-laws.). Here both the by-laws and rules and regulations were validly incorporated in the covenant. The Declarations repeatedly mention that property owners would also be subject to the provisions contained in both documents. The ease law from both this court and other jurisdictions indicates that potential buyers are on notice of unrecorded documents that are specifically referenced within properly recorded instruments, and that this is a standard practice. This rule does not change with respect to recorded covenants affecting land. While the by-laws were not created in this case until 2006, nine years after the Declarations were filed, the by-laws, as they relate to the present controversy, simply provide details and amendments to issues that were specifically contemplated and mentioned in the Declarations as filed in 1997. The dissent argues that allowing Diamante to reference its by-laws and regulations without recording them undermines the purpose of the recording requirement. However, the recording act is designed to put subsequent purchasers on notice of interests affecting real property. There is clearly enough information in the Declarations to allow a purchaser to make an inquiry as to their contents. Therefore, we hold that the by-laws and rules and regulations were sufficiently referenced in the Declarations to be incorporated. IV. Deferment of Dues The appellants argue in their fifth point that the trial court erred when it held that the Declarations did not prevent the club from deferring dues, and that challenges otherwise are barred by the statute of limitations. The Arkansas Code requires actions based on a breach of a written covenant to be brought within five years. Ark. Code Ann. § 16-56-115 | ;)(Repl. 2005). Declaratory relief is “dependent on and not available in the absence of a justiciable controversy,” and is “intended to supplement rather than supercede ordinary causes of action.” Martin v. Equitable Life Assur. Soc. of the U.S., 344 Ark. 177, 181, 40 S.W.3d 733, 736 (2001). Lastly, the statute of limitations begins to run when there is a “complete and present cause of action,” which is, absent concealment or wrong, when the “injury occurs, not when it is discovered.” Gunn v. Farmers Ins. Exch., 2010 Ark. 434, at 8, 372 S.W.3d 346, 352; Hunter v. Connelly, 247 Ark. 486, 491-92, 446 S.W.2d 654, 657 (1969). The trial court found that it was generally known by 2003 that the club was actively deferring dues. Assuming, arguen-do, that 2003 is the date for the tolling of the statute, the latest that suit could have been brought was in 2008. The Dyes brought their suit in 2012, four years after the statute had run. The court therefore did not err in holding any action based on Diamante’s deferment of dues was time-barred. Alternatively, even if the limitation period had not run, the deferment of dues would not be a breach of the Declarations. We have previously stated that, “[w]here the language of the ... covenant is clear and unambiguous, application of the [covenant] will be governed by our general rules of interpretation; that is, the intent of the parties governs as disclosed by the plain language of the restriction.” White v. McGowen, 364 Ark. 520, 522, 222 S.W.3d 187, 189 (2006). However, we cautioned that the courts will not enforce covenants when “they do not apply alike to all units in the same subdivision enjoying the benefits to the common properties.” Kell, 258 Ark. at 764, 528 S.W.2d at 655. | mHere, the plain language of the Declarations states, “The monthly dues shall commence and become due and payable as to each lot or living unit on the date fixed by the Club for commencement.” This language clearly gives the club the authority to vary the commencement date between lots. The appellants argue that earlier provisions in the Declarations that require each property owner to have a full golf membership and pay monthly dues conflict with the former provision. However, this provision does not exempt properties from becoming golf members, but only allows the club to state when their obligations to pay become due. Further, the deferred lots did not have access to the course during their deferment period and therefore did not violate Kell by allowing owners who are not paying dues to have the same benefits as those who are. We affirm the circuit court and hold that the deferment of dues was not a violation of the Declarations. V. Public Golf Memberships For them sixth point, the appellants argue that the trial court erred in holding that the club was authorized to create other golf memberships that do not run with the land and that any claim otherwise is barred by the statute of limitations. We previously addressed the applicable limitations period above in regards to a breach of the Declarations. In the instant case, the language in the Declarations clearly puts a purchaser on notice that the club may create “categories of membership, not running with the land, which may be made available to the general public.” The appellants argue this language does not mean that the club could make other golf memberships. However, the Declarations clearly put the appellants on notice that the full golf membership is subject to the rules and regulations of the club. The trial court found that a version of the club’s rules and regulations existed as | nearly as 1994. Furthermore, those documents allow the club to create “other categories of golf memberships but not at the same level of privilege as Full Golf Members or that run with the land.” Given the authority in both the rules and regulations as well as the Declarations, the circuit court was correct that the Declarations authorize the club to create other categories of golf membership. Lastly, as the trial court noted, the club had actively created other forms of golf membership since 1998. Any claim for an alleged breach had long been time-barred. The appellants point out that several pieces of sales material specifically stated that use of the golf course would be limited to the property owners and their guests. They allege that allowing non-property-owning individuals to use the course is a fundamental breach of the covenant and therefore the tie-in provisions cannot be enforced by the club. However, those provisions within the sales materials are neither contained nor referenced within the Declarations. Therefore, they did not become part of the agreement between the parties and are not terms under the covenant. VI. Course Maintenance The appellants argue in their seventh point that the club materially breached its duties to maintain the golf course by not maintaining the sand traps. Under Arkansas law, “[w]hen performance of a duty under a contract is contemplated, any non-performance of that duty is a breach.” Zufari v. Architecture Plus, 323 Ark. 411, 420, 914 S.W.2d 756, 761 (1996). We have also further emphasized that “[a] ‘material breach’ is a failure to perform an essential term or condition that substantially defeats the purpose of the contract for the other party. A material breach excuses the performance of the other party.” TXO Prod. Corp. v. Page Farms, Inc., 287 Ark. 304, 307, 698 S.W.2d 791, 793 (1985) (citing Restatement (First) of Contracts: Material Breach or Non-Performance of One Party as a Discharge of the Duty of the Other § 397 (1932)). The appellants point out that Diamante had previously set aside $300,000 to repair the course but deferred spending the funds in response to the current suit. They allege the deferment of those dues was a material breach of Diamante’s covenant to maintain the course. However, there is nothing in the Declarations that required the club to spend a certain amount on course maintenance. Further, at trial, the club manager testified that the course was recognized as being one of the top ten in Arkansas. Multiple other property owners testified that Diamante was a good course. The appellants’ witness introduced pictures of several bunkers on the course that appear to be in states of disrepair. However, that same witness later testified that he considered Diamante to be a “good” course, and he confirmed that Diamante had been making efforts to deal with other maintenance issues on the course. Even if the facts alleged were considered a breach, they most certainly would not be so material as to defeat the purpose of paying dues and render the covenants unenforceable. We therefore find no error below. VII. Declaration That the Tie-in Covenants Were Unenforceable The appellants in their last point argue that, based on the accumulation of their points above, the court erred when it did not declare the provisions at issue within the Declarations to be unenforceable. Specifically, the appellants complain that the club breached the Declarations by not holding the clubhouse for the exclusive use of the property owners. However, the Declarations and the rules and regulations clearly allow the club to create |1Rother classes of membership that may have access to the club facilities. Further, the Declarations specifically allow the club to charge individual user fees for the amenities and services provided through the facilities. Therefore, the trial court did not err in holding the covenants enforceable. The dissent repeatedly points out that the Declarations are restrictive covenants that are disfavored under Arkansas Law. Royal Oaks Vista, L.L.C. v Maddox, 372 Ark. 119, 123, 271 S.W.3d 479, 482 (2008). However, we have stated that restrictions on the use of land are disfavored under the law. Id.; Cochran v. Bentley, 369 Ark. 159, 166, 251 S.W.3d 253, 260 (2007) (Provision which prohibited nonresidential structures on residential lots was a restrictive covenant.); White v. McGowen, 364 Ark. 520, 522, 222 S.W.3d 187, 189 (2006) (Provision which stipulated that only single-family dwellings may be built on a lot was a restrictive covenant.). Here, none of the provisions in the Declarations prohibit how the individual lots may be used but only require each lot owner to pay monthly dues and a transfer fee upon sale. Therefore, the covenants contained in the Declarations are not restrictive covenants and are not subject to such strict scrutiny. We therefore find no error in the circuit court’s decision and affirm the judgment on all counts. Affirmed. Special Justice David Sterling joins. Baker and Hart, JJ., dissent. Wood, J., not participating. . (1) Finding that the transfer-fee covenants in the supplemental declarations requiring all property owners to pay the privately owned Club transfer fees whenever a Diamante home or lot is sold or otherwise transferred are enforceable and not in violation of Arkansas law; (2) Failing to find that the tie-in covenants are unenforceable because they constitute an unreasonable restraint on alienation of the homes and lots in the two Diamante subdivisions; (3) Finding that the Club’s bylaws, as they may be amended from time to time, are incorporated by reference into the supplemental declarations as a matter of law; (4) Finding that the Club's rules and regulations, as they may be amended from time to time, are incorporated by reference into the supplemental declarations as a matter of law; (5) Finding that the supplemental declarations authorize the Club’s failure to collect dues for 10 years from the purchasers of the 93 deferred lots, and that appellants are barred by statutes of limitation from using the sale of the deferred lots in defense against the Club's use of the tie-in covenants; (6) Finding that the supplemental declarations authorize the Club to create golf memberships for non-property owners and give golf privileges to nonproperty owners, and that appellants are barred by statutes of limitation from using those practices in defense against the Club's use of the tie-in covenants; (7) Failing to find that the Club has breached its duty to property owners contained in the supplemental declarations to maintain the sand traps on the Diamante golf course for the use of the property owners; and (8) Not declaring that, in law or in equity, the tie-in covenants contained in the supplemental declarations were unenforceable by Diamante.