Cite as 2022 Ark. App. 361

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-19-765

| | |
|---|---|
| AL FAIGIN AND N.G. FAIGIN<br>APPELLANTS<br><br>V.<br><br>DIAMANTE MEMBERS CLUB, INC.;<br>AND DIAMANTE, A PRIVATE<br>MEMBERSHIP GOLF CLUB, LLC<br>APPELLEES | Opinion Delivered September 28, 2022<br><br>APPEAL FROM THE SALINE<br>COUNTY CIRCUIT COURT<br>[NO. 63CV-10-959]<br><br>HONORABLE GRISHAM PHILLIPS,<br>JUDGE<br><br>AFFIRMED |

**ROBERT J. GLADWIN, Judge**

This appeal comes from a final judgment and decree of foreclosure entered by the Saline County Circuit Court granting summary judgment in favor of the appellees. Appellants, Al Faigin and N.G. Faigin (collectively "appellants"), are owners of property within the Diamante subdivision located in Hot Springs Village, Arkansas. The appellees, Diamante, A Private Membership Golf Club, LLC and Diamante Members Club, Inc. (collectively "appellees"), respectively, are the former and current owners of a private golf club associated with the developed subdivision. Appellants raise five points on appeal. We affirm the judgment of the circuit court.

I. *Background Facts*

In 1994, Cooper Communities, Inc. ("CCI"), and Club Corporations of America announced plans to build a private golf course with 450 dwelling units that would have access to the course. The private golf club was advertised as a premier amenity associated with the development. On March 29, 1994, CCI recorded the supplemental declarations of covenants and restrictions (the "Declarations") for the subdivision in the office of the circuit clerk and recorder of Saline County, Arkansas.

The Declarations set forth the intention of CCI to develop lands adjacent to the subdivision into Diamante, A Private Membership Golf Club, Inc. ("Old Club"),[1] and declared all purchasers of lots within the subdivision subject to the covenants contained therein, including but not limited to, a "full golf membership" that entitled the lot owner to utilize the facility at the "highest level of privilege." Further, all property owners are required to pay monthly dues, pay a transfer fee anytime the property is sold, and give Old Club lien and foreclosure rights for any unpaid fees. Additionally, the Declarations state that the provisions would be subject to the rules and regulations of the club as well as any articles and bylaws, revised or amended by Old Club. The Declarations also authorize the club to create other categories of membership that may be made available to the general public.

Appellants purchased a lot in the subdivision from John D. Schoonover, trustee of the Schoonover Living Trust, on July 31, 2006. As of April 30, 2010, appellants were

---

[1]We refer to Diamante, A Private Membership Golf Club, Inc., as "Old Club" and its predecessor, Diamante Members Club, Inc., as "New Club" due to an assignment, as detailed below, wherein Old Club assigned its rights related to the subdivision to New Club.

delinquent in the amount of $3,341.91 for monthly club dues. On October 14, 2010, Old Club recorded a lien against the property and on November 16, 2010, Old Club filed its complaint in foreclosure against the appellants.

Subsequently, the Faigins moved for class certification and appointment of class counsel on January 5, 2011, on behalf of all lot owners in the subdivision. *See Faigin v. Diamante, a Private Membership Golf Club, LLC*, 2012 Ark. 8, 386 S.W.3d 372. The motion was denied, and as a result, appellants brought an interlocutory appeal to the Arkansas Supreme Court. The supreme court affirmed the circuit court's denial of the motion. *Id.*

Following the denial of class certification, Linda and Gary Dye brought suit in 2012 in the Saline County Circuit Court seeking a declaratory judgment to have the provisions contained in the Declarations declared unenforceable. Subsequently, a class of property owners in the Diamante subdivision was certified by the circuit court, and the certification was affirmed by the Arkansas Supreme Court in *Diamante, LLC v. Dye*, 2013 Ark. 501, 430 S.W.3d 710. The class requested that the circuit court declare the covenants contained in the Declarations unenforceable; order Old Club to disgorge dues paid during the suit; mandate that dues recovered go directly to the maintenance and upkeep of the golf course; and award attorney's fees. *See Dye v. Diamante, a Private Membership Golf Club, LLC*, 2017 Ark. 42, 510 S.W.3d 759. The circuit court declared the provisions of the Declarations valid and also denied disgorgement of any dues. The supreme court affirmed the circuit court's order on February 16, 2017. *Id.*

After *Dye* had concluded, appellants filed their third amended answer and also asserted a counterclaim against Old Club. Appellants asserted a cause of action for deceit for the alleged deliberate concealment of intent by Old Club related to exclusivity, or lack thereof, of the golf course and access thereto by non-property owners. They also alleged the following affirmative defenses: (1) deceit; (2) fraudulent inducement of contract; (3) inapplicability of the statute of limitations; (4) offset; and (5) waiver of unpaid dues charged after attempts to resign their full golf membership.

In response, Old Club moved to dismiss and argued that the claim of deceit should have been raised in the *Dye* lawsuit; the question of whether it could allow non-property owners to use the golf course had already been adjudicated; and the statute of limitations had expired. Appellants steadfastly maintain that the fraud was concealed until July 10, 2014, when Randy Brucker, president of the developer, testified in *Dye* that it was the intent of the developers to offer golf memberships to non-property owners from the beginning. Accordingly, appellants allege their claim was brought within the three-year statute of limitations. They also maintain that their counterclaim is not barred by the doctrine of res judicata.

On May 31, 2017, appellants executed a quitclaim deed wherein they conveyed their interest in the property to Old Club. In response, Old Club executed a quitclaim deed back to appellants and noted their reconveyance of the property was unauthorized and not accepted. Notwithstanding Old Club's refusal to accept the conveyance, appellants filed a disclaimer of interest for the property on October 10, 2017.

4

While this matter was progressing, Old Club entered into an asset purchase and sale agreement with Diamante Members Club, Inc. ("New Club"), on July 28, 2017. Moreover, CCI entered a quitclaim of developer rights on December 19, 2017, wherein it transferred its rights and title to the Declarations as well as other recorded documents related to the subdivision to New Club. Last, Old Club entered into an assignment of pending litigation, judgment, and liens (the "Assignment") wherein it assigned its rights, titles, interests, powers, privileges, benefits, and obligations under the recorded liens, acquired judgments, and pending foreclosure causes of action to New Club.

On December 3, 2018, New Club moved for summary judgment against appellants, arguing that no genuine issues of material fact remain and appellants failed to provide any valid defense to the complaint. In support of its motion, New Club attached the affidavit of Terri Socha, the club's property controller, wherein she attested to the membership dues and fees owed by appellants. Additionally, the real property lien; delinquent-dues spreadsheet; Declarations; quitclaim of developer's rights; and Assignment were provided by New Club. Appellants opposed the summary-judgment motion and argued, among other things, that they had no knowledge of the terms of the Declarations; no claim for deceit was alleged or adjudicated in *Dye*, 2017 Ark. 42, 510 S.W.3d 759; and there exists no contractual agreement between themselves and New Club. Mr. Faigin attested to such assertions via affidavit, which was attached as an exhibit to appellants' response. Subsequently, appellants filed a cross-motion for summary judgment or, in the alternative, partial summary judgment. New Club defended summary judgment on the bases of the statute of limitations and res

judicata. On April 11, 2019, Old Club filed a response to appellants' summary-judgment motion citing the ruling in *Dye*.

The circuit court held a hearing on May 2, 2019, wherein the court heard argument on both motions for summary judgment as well as Old Club's motion to dismiss appellants' counterclaim. On May 6, 2019, the circuit court emailed its findings of fact and conclusions of law to counsel for the parties. For the purposes of the findings, the circuit court noted that it considered the two entities (Old Club and New Club) to be "one in the same." A final judgment and decree of foreclosure was entered by the court on May 31, 2019. The circuit court held as follows:

> The same facts which form the basis of the Defendants' defenses and counterclaims were presented to the circuit court of Saline County in the case of *Dye v. Diamante, A Private Membership Golf Club, LLC*, Case No. 63CV-12-90. The *Dye* case was certified as a class action. The Plaintiff class consisted of all of the property owners in Diamante Subdivision, which includes the Defendants herein. The trial court ruled against the Plaintiff class in the *Dye* case, and on February 16, 2017, the Arkansas Supreme Court upheld the trial court's decision and found that the covenants between Diamante Golf Course and the property owners were enforceable. The Defendants herein did not opt out of the Plaintiff class; therefore, they are bound by the trial court's decision as well as by the affirmation of the Arkansas Supreme Court.

Furthermore, the circuit court stated that while the *Dye* class did not assert a cause of action for deceit, fraud, or misrepresentation, the pleadings filed in *Dye* alleged the same facts used here to form the basis of fraudulent inducement as a defense as well as the counterclaim for deceit.[2] Accordingly, the court determined that appellants' claims could have been litigated

---

[2]The circuit court also noted that counsel for appellants was the same attorney who represented the plaintiffs in the *Dye* class action.

6

in *Dye* and because they were not, their claims are subject to the doctrine of res judicata, and therefore, are forever settled and cannot be litigated. Additionally, the court declared all remaining defenses asserted by appellants meritless.

Following entry of judgment, New Club filed a petition for attorney's fees, which was granted by the circuit court on July 24, 2019. Appellants filed timely notices of appeal on July 24, 2019. This appeal followed.

## II. *Points on Appeal*

On appeal, appellants argue the following: (1) they were denied their right to a jury trial; (2) res judicata was no bar because (a) there was no claim preclusion, (b) there was no issue preclusion, and (c) unknown claims are not barred by res judicata; (3) reversal and remand is appropriate because fraudulent inducement is a proper defense that must be considered, specifically (a) fraudulent inducement is a question of fact, (b) the statute of limitations is no bar to raising fraudulent inducement in defense of the principal lawsuit or by conclusion, (c) the fraud alleged of selling golf membership to non-lot-owners was hidden by the secret plan and by fraudulent inducement, (d) the statute of limitations is no bar under Ark. Code Ann. § 16-56-102, and (e) time limitations were tolled because of the fraudulent conduct; (4) New Club's claims were based on a failed assignment because it abolished the earlier contract by its amended and substituted bylaws, and appellants never agreed to New Club's contract; and (5) the award of fees and costs should be reversed.

## III. *Discussion*

7

Appellants contend that res judicata is not applicable; therefore, the circuit court's order should be reversed and remanded. Specifically, appellants maintain that *Dye* was devoid of any allegations of fraud in the inducement of a contract; that the issues litigated were not the same; they were not parties in *Dye* nor was New Club; and there was no full and fair opportunity in *Dye* for the parties to litigate fraud in the inducement because it was not revealed until the trial testimony of Mr. Brucker. In response, New Club contends appellants had knowledge of what they now allege as fraud but instead characterized the same underlying facts as breach of contract in *Dye.* Old Club filed a separate appellate brief in defense of the circuit court's dismissal of the counterclaim arguing that appellants' claim is merely clothed in a different theory of recovery than in *Dye*; therefore, the appeal is barred by res judicata.

While this is an appeal from a motion granting summary judgment, the application of res judicata is the core of this appeal. When this court reviews a legal doctrine such as res judicata, we simply determine whether the appellees were entitled to judgment as a matter of law. *Daily v. Langham*, 2017 Ark. App. 310, 522 S.W.3d 177.

The concept of res judicata has two facets, one being claim preclusion and the other issue preclusion. *Sutherland v. Edge*, 2021 Ark. App. 428. Res judicata bars not only the relitigation of claims that were actually litigated in the first suit but also those that could have been litigated. *Id.* Where a case is based on the same events as the subject matter of a previous lawsuit, res judicata will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies. *Id.* The purpose of the res judicata doctrine is to put an end

to litigation by preventing a party who had one fair trial on a matter from relitigating the matter a second time. *DeSoto Gathering Co., LLC v. Hill*, 2018 Ark. 103, 541 S.W.3d 415. The key question regarding the application of res judicata is whether the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question. *Winrock Grass Farm, Inc. v. Affiliated Real Est. Appraisers of Ark., Inc.*, 2010 Ark. App. 279, 373 S.W.3d 907. Res judicata is based on the assumption that a litigant has already had his day in court. *Cox v. Keahey*, 84 Ark. App. 121, 133 S.W.3d 430 (2003).

Claim preclusion bars relitigation of a claim in a subsequent suit when five factors are present: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies. *Winrock*, 2010 Ark. App. 279, at 6–7, 373 S.W.3d at 912. Issue preclusion, otherwise known as collateral estoppel, applies when the following elements are present: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) the issue must have been determined by a final and valid judgment; and (4) the determination must have been essential to the judgment. *Id.* at 10, 373 S.W.3d at 914.

Here, the circuit court found that appellants' claims were barred by claim preclusion. The court held that the "pleadings filed in the *Dye* case by counsel for the Plaintiffs in the *Dye* case and Defendants herein allege the same facts that he now claims constitute the tort of deceit, although he did not denominate it as deceit, fraud, or misrepresentation at the

time." Additionally, the circuit court reiterated that the basis for the alleged "new" cause of action is testimony elicited in the *Dye* case; that counsel for appellants was present when that testimony was elicited; and counsel was aware of the testimony before the circuit court rendered a decision. Accordingly, the court held that appellants could have litigated their claim of deceit and/or fraud in the inducement in *Dye*, and because they did not do so, their claims are barred by res judicata. We agree.

In *Dye*, the Arkansas Supreme Court expressly addressed Old Club's right to create public golf memberships pursuant to the terms of the Declarations. The court held as follows:

> In the instant case, the language in the Declarations clearly puts a purchaser on notice that the club may create "categories of membership, not running with the land, which may be made available to the general public." The appellants argue this language does not mean that the club could make other memberships. However, the Declarations clearly put the appellants on notice that the full golf membership is subject to the rules and regulations of the club. The trial court found that a version of the club's rules and regulations existed as early as 1994. Furthermore, those documents allow the club to create "other categories of membership but not at the same level of privilege as Full Golf Members or that run with the land." Given the authority in both the rules and regulations as well as the Declarations, the circuit court was correct that the Declarations authorize the club to create other categories of membership. Lastly, the trial court noted, the club had actively created other forms of golf membership since 1998. Any claim for an alleged breach had long been time-barred.

*Dye*, 2017 Ark. 42, at 10–11, 510 S.W.3d at 766. Furthermore, the *Dye* court specifically addressed the documentation used to market the development, which maintained that use of the golf course would be limited to Diamante property owners and their guests. The *Dye* class members provided the marketing materials to support their claim that allowing non-

property-owning individuals to use the golf course was a fundamental breach of contract, thereby rendering the Declarations unenforceable. Here, appellants submitted the same documents to support their fraud claim against appellees. However, the supreme court in *Dye* rejected the plaintiff class members' argument and held that because the provisions contained in the sales materials were not contained or referenced within the Declarations, they did not become a part of the agreement between the parties. *Id.* at 11, 510 S.W.3d at 766.

We find that the elements of claim preclusion are satisfied. First, all pending motions were decided by summary judgment, and summary judgment is a final adjudication on the merits. *See Nat'l Bank of Com. v. Dow Chem. Co.*, 338 Ark. 752, 1 S.W.3d 443 (1999). Second, the Saline County Circuit Court had jurisdiction to hear the motions. Third, appellants fully contested entry of summary judgment in favor of appellees. And fourth, appellants were unnamed parties in *Dye*, and while they make the argument that New Club was not a party, the parties need not be precisely the same for a judgment in one action to bar another. *See Winrock*, 2010 Ark. App. 279, 373 S.W.3d 907. As long as there is substantial identity or privity of parties, this element of claim preclusion is met. Privity of parties within the meaning of res judicata means a person so identified in interest with another that he represents the same legal right. *Spears v. State Farm Fire & Cas. Ins.*, 291 Ark. 465, 725 S.W.2d 835 (1987). Here, there is clearly privity between Old Club and New Club pursuant to the Assignment, and furthermore, there is substantial identity because the same claim is at stake for both parties (i.e., the foreclosure of lien on appellants' property).

Finally, and undoubtedly where the highest source of contention lies—is whether both suits involve the same claim or cause of action. Appellants strongly maintain their claim for fraud was unknown until the *Dye* trial, therefore, res judicata does not bar their right to bring such claim in a later lawsuit. We disagree. Several points on appeal in *Dye* centered on the so-called lack of "exclusiveness" of the club, even referencing the same marketing material appellants set forth here, to evidence how the lots were marketed to potential property owners. As held in *Dye*, the Declarations were public record prior to the sale of any lot in the subdivision, and those Declarations allow the developer to create other categories of golf memberships that do not run with the land. Therefore, property owners were on notice that a membership was subject to the rules and regulations of the club and probable "less privileged" use of the facilities by the general public. *Dye*, 2017 Ark. 42, at 10–11, 510 S.W.3d at 766.

Despite the terms of the Declarations, appellants maintain that Old Club deliberately concealed its "secret plan," and as a result, they are entitled to damages for deceit and/or fraud in the inducement. As noted by the circuit court, appellants' attempt to nominate their cause of action as one for "deceit, fraud, or misrepresentation" does not change the fact that appellants' claim involves the same set of facts alleged in *Dye*. Appellants were unnamed members of the class action and thus are bound by the circuit court's decision in *Dye*, as affirmed by the Arkansas Supreme Court.

Considering our record on appeal, as well as the multitude of accompanying circuit court cases and appeals involving these facts and parties, we find this to be textbook res

judicata. Allowing the appellants, who have already had their day in court, to continue on this journey of litigating the same set of facts goes against the clear purpose of the well-established doctrine of res judicata, which is to prevent a litigant, who had a fair trial on the merits, from relitigating the matter a second time. Thus, appellees were entitled to judgment as a matter of law, and res judicata applies to prevent appellants' claims on appeal. The circuit court correctly applied res judicata in granting summary judgment in favor of appellees.

We note that appellants raise other challenges to the circuit court's order granting appellees' motions for summary judgment. However, having concluded that res judicata bars appellants' suit, we need not consider the other points on appeal.

Affirmed.

GRUBER and BARRETT, JJ., agree.

*Robert S. Tschiemer*, for appellants.

*Schnipper, Britton & Stobaugh*, by: *Beau Britton*, for separate appellee Diamante Membership Club, Inc.

*McMillan, McCorkle & Curry, LLP*, by: *J. Philip McCorkle*, for separate appellee Diamante, a Private Membership Golf Club, LLC.